■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v RICKEY BURRELL, Respondent. [653 NYS2d 565] —Order of the Supreme Court, New York County (Charles Solomon, J.), entered March 2, 1995, which dismissed the indictment herein on the ground that the Grand Jury evidence was insufficient to support the charges of robbery in the first and second degrees, is unanimously reversed, on the law, and the indictment reinstated and the matter remanded to the Supreme Court for further proceedings.

On Sunday, October 30, 1994, Monique Dupree, the manager of the Blockbuster Video Store at 2608 Broadway in Manhattan, saw two men enter the store together. One of the men walked up to her, aimed a gun at her and announced a robbery. He walked her to the front entrance and told her to lock the front door. She saw the defendant standing outside, directly in front of the door, leaning with his back against the door, in such a position that no one could enter or leave unless he moved out of the way. Ms. Dupree's immediate impression was that defendant was acting as the "lookout" for the two robbers inside the store. As she locked the door, defendant turned and looked at her and she recognized him as a former employee of the security company utilized by Blockbuster at that location. One of the robbers took Dupree to her office, asking how much money was in the safe and where the store's security videotapes were located. When they arrived at the office, she was surprised to see that the other robber was already there. Dupree unlocked the door and opened the safe inside the office. As one of the men emptied the safe, the other took Dupree to the front of the store where the cash drawers and security tapes were located. Dupree handed over the videotapes as the robber emptied the cash from the drawers. Dupree and the gunman went back to her office and the men asked when the Brinks guards were scheduled to make their daily pickup of the cash receipts contained in the second safe in the office (access to that safe could only be made with a guard from the armored car company). Unsure of when the pickup would be made, Dupree falsely told the gunmen that the guards made pickups only on weekdays. The robbers tied Dupree to a chair and finished removing money from the opened safe. Another employee was already tied to a chair. The men left, then returned a short time later to retrieve the security tapes they had forgotten to take.

Defendant was identified by Dupree in a lineup as the man standing outside the front door. Officer Frey who arrested defendant, testified that defendant said if witnesses did not show up, the police would have no case. Frey told defendant he would find his accomplices and would check out every name in defendant's phone book. Defendant replied that Frey would not be able to check unlisted beeper numbers. Defendant also told Frey that, at the time of the robbery, he was living at his brother's house. Frey further testified that on November 8, 1994, he questioned Gloria Alexander, defendant's sister, who told him that she had not seen defendant in more than two months. However, at the Grand Jury, Ms. Alexander testified that on the evening of Saturday, October 29, defendant called her and asked to stay at her apartment because he had had a fight with his girlfriend and had no place to stay. Ms. Alexander testified that defendant spent the night at her apartment and was still sleeping the next day at 11:30 A.M. when she left the apartment.

The Court of Appeals has previously stated the proper standard for reviewing the sufficiency of evidence before the Grand Jury: "The Grand Jury may not indict unless the People present evidence establishing a prima facie case of criminal conduct (*see, People v Dunleavy*, 41 AD2d 717, *affd* 33 NY2d 573). The sufficiency of the People's presentation is properly determined by inquiring whether the evidence viewed in the light most favorable to the People, *if unexplained and uncontradicted*, would warrant conviction by a petit jury (*see, People v Pelchat*, 62 NY2d 97, 105)." (*People v Jennings*, 69 NY2d 103, 114; emphasis added.)

In a later case, the Court of Appeals emphasized that: "this standard limits the reviewing court's inquiry to determining whether the facts, if proven, and the inferences that logically flow from those facts supply proof of every element of the charged crimes. That *other, innocent inferences could possibly be drawn from the facts is irrelevant on this pleading stage inquiry*, as long as the Grand Jury could rationally have drawn the guilty inference; the standard that every hypothesis but guilt be excluded to a 'moral certainty' is to be applied only by the trier of fact. Similarly, on a motion to dismiss an indictment * * * the court may not examine the adequacy of the proof or determine whether there was 'reasonable cause to believe' that the charged crimes were committed by the accused (*see*, CPL 190.65 [1] [b]), since resolution of those questions 'is exclusively the province of the Grand Jury' (*People v Jennings, supra*, at 115)." (*People v Deegan*, 69 NY2d 976, 979; emphasis added.)

Thus, the evidence that, at the exact time of the robbery, defendant, a former security guard at this store, positioned himself right in front of the door entrance so that no one could enter or leave, when viewed in the light most favorable to the People and giving them the benefit of every reasonable inference to be drawn therefrom, provided reasonable cause to believe that defendant "intentionally aid[ed]" the two robbers in the commission of first and second-degree robbery, with the intent to commit said crimes (Penal Law §§ 20.00, 160.15 [4]; § 160.10 [1]). The Supreme Court erred when it drew and applied its own innocent inference from these facts in dismissing the indictment. As noted above, it is simply irrelevant that other, innocent inferences could possibly be drawn from the facts as long as the Grand Jury could have rationally drawn the guilty inference (*People v Deegan, supra,* at 979).

Contrary to the decision of the Supreme Court, the evidence before the Grand Jury did *not* consist merely of defendant's presence at the scene. Other evidence was presented, which if believed, further established defendant's complicity in the crimes charges. These included not only defendant's presence, but the manner in which he blocked entry into the store and his curious inaction during the course of the robbery in view of his past employment as a security guard in the store. Further, the evidence presented showed that the robbers had the assistance of someone who was familiar, as was defendant, not only with the routine of the store, but also its layout and who had a knowledge of its security equipment and the transportation of cash receipts by the armored car guards. Further, the inconsistent statements and testimony by the defendant's sister were strong evidence of a consciousness of guilty. The assertion of false explanations or alibis comes within the broad category of conduct evidencing a consciousness of guilty (*People v Leyra,* 1 NY2d 199, 208). Concur—Ellerin, J. P., Wallach, Nardelli, Tom and Mazzarelli, JJ.