*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  May 26, 2016                    106513
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                        Respondent,
        v                                   MEMORANDUM AND ORDER

JEREMY R. BOST,
                        Appellant.
_____


Calendar Date:   March 23, 2016

Before:  Peters, P.J., Lahtinen, Rose, Lynch and Aarons, JJ.

                        _____


        Theodore J. Stein, Woodstock, for appellant.

        Paul Czajka, District Attorney, Hudson (James A. Carlucci
of counsel), for respondent.

                        _____


Lynch, J.

        Appeal from a judgment of the County Court of Columbia
County (Nichols, J.), rendered June 17, 2013, upon a verdict
convicting defendant of the crimes of burglary in the first
degree (four counts), robbery in the first degree, criminal
possession of a weapon in the second degree (two counts) and
criminal possession of a weapon in the third degree.

        Defendant, along with two codefendants, was charged in a
nine-count indictment for a series of events stemming from three
home invasions occurring over the course of three days in January

2012.[1]  On the night of January 9, 2012, defendant and one accomplice entered a trailer in the Village of Valatie, Columbia County.  One of the residents, Edrick King, was woken up by the two men, who both wore hooded sweatshirts and masks over their faces, as they searched his room and demanded money.  During the late evening/early morning hours of January 11 and 12, 2012, three men committed a home invasion in the Town of Chatham, Columbia County.  The owners of that home testified that they awoke to find two men in their hallway, each brandishing a gun, and that, after they confronted the intruders, the men left.  Shortly thereafter, during a traffic stop, defendant was found with two guns tucked in his waistband.  Following a jury trial, defendant was convicted of four counts of burglary in the first degree, one count of robbery in the first degree, two counts of criminal possession of a weapon in the second degree and one count of criminal possession of a weapon in the third degree. County Court sentenced defendant, as a second felony offender, to an aggregate prison term of 53 years to be followed by 20 years of postrelease supervision.  Defendant now appeals.

Defendant contends that the evidence was legally insufficient to support his convictions and the verdict was against the weight of the evidence.  Insofar as is relevant to the issues that defendant raises on appeal, a necessary element for both burglary in the first degree and robbery in the first degree is that the defendant or another participant possessed a "deadly weapon" (see Penal Law §§ 140.30 [1]; 160.15 [2]).  A "deadly weapon" is defined as a "loaded weapon from which a shot, readily capable of producing death or other serious physical injury, may be discharged" (Penal Law § 10.00 [12]).  Therefore, to constitute a deadly weapon, the weapon must be "both operable and loaded with live ammunition" (People v Shaffer, 66 NY2d 663, 664 [1985]; see People v Grice, 84 AD3d 1419, 1420 [2011], lv denied 17 NY3d 806 [2011]).  To convict defendant of criminal possession of a weapon in the second degree, the People had to establish that he possessed a loaded firearm at a location other

_____

[1]  This Court previously affirmed the conviction of one codefendant (People v Anderson, 118 AD3d 1138 [2014], lv denied 24 NY3d 1117 [2015]).

than his home or place of business (see Penal Law § 265.03 [3]) or "with intent to use the same unlawfully against another" (Penal Law § 265.03 [1] [b]; see People v Dale, 115 AD3d 1002, 1004 [2014]). A loaded firearm is defined as "any firearm loaded with ammunition or any firearm which is possessed by one who, at the same time, possesses a quantity of ammunition which may be used to discharge such firearm" (Penal Law § 265.00 [15]).

With respect to the home invasion on January 9, 2012, the People presented testimony by residents King and Bryon Wilson. King testified that he saw two people each with guns entering his trailer. King was also able to identify the guns that each of the intruders were holding. Wilson testified that he never woke up that evening but, when he woke up the next morning, he discovered that his bag and work gloves were missing. The People also presented testimony by Catrina Lewis, who testified that, during the evening on January 9, 2012, she was in a vehicle with defendant and two others, that the vehicle stopped at one point and that the three men left the vehicle and later returned with a bag, which they later threw out of the vehicle. Paul Strobel, a sergeant with the State Police, testified that he found a bag and a glove on the side of the road, and Wilson confirmed that the bag and glove were the ones that went missing on January 9, 2012.

With respect to the home invasion that occurred on the late evening/early morning of January 11 and 12, 2012, David Chrapowitzky testified that he woke up when he heard people in the hallway outside of his bedroom. When he got up and went into the hallway, he turned on the light and saw two men, both wearing masks, who "spun around, came directly down the hall towards [him and] brought up pistols." Chrapowitzky also testified that while he was in the hallway, he heard "the sound of a shell being . . . moved into a chamber." Barbara Chrapowitzky, David Chrapowitzky's wife, testified that she was woken up by the sound of her husband confronting the two intruders. She testified that she saw two men with guns in the hallway.

Donald Krapf, a sergeant with the Columbia County Sheriff's Office, testified that shortly after midnight on January 12, 2012, he responded to a police radio call regarding a home invasion. While en route, he pulled over a vehicle where a

defendant was a passenger.  When Krapf searched defendant, he found two handguns in his waistband.  According to Krapf, the .32 caliber handgun was not loaded, but the .45 caliber handgun was "cocked," had a round in the chamber and was ready to be fired. Krapf secured the .45 caliber handgun by unloading the weapon, removing the magazine and drawing the slide back.  After an in-court demonstration, David Chrapowitzky and Barbara Chrapowitzky both confirmed that, on the night of the home invasion, they heard the sound of the .45 caliber handgun being loaded.  Lewis testified that she was in the vehicle with defendant, two other men and her cousin on the night of the January 11-12, 2012 home invasion, that she heard the same sound just before defendant left the vehicle and that she observed defendant with the .45 caliber handgun.  William Dunspaugh, a Columbia County Deputy Sheriff, testified that when he searched the vehicle that defendant had been in when he was apprehended on January 12, 2012, he found an unfired .45 caliber bullet. Anthony Brahm, a criminal investigator with the Columbia County Sheriff's office and a certified state firearms instructor, testified that he test-fired the .45 caliber handgun with the ammunition that was in the magazine when the handgun was seized on January 12, 2012.

To determine whether a verdict is legally sufficient, we must decide, upon consideration of the facts in the light most favorable to the prosecution, whether "there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (People v Denson, 26 NY3d 179, 188 [2015] [internal quotation marks and citations omitted]).  Here, Lewis and the Chrapowitzkys confirmed that they heard the sound of the .45 caliber handgun being loaded.  Krapf testified that defendant had the loaded .45 caliber handgun tucked into his waistband and, based on Brahm's testing, the .45 caliber handgun was operable. In our view, this evidence establishes that defendant possessed a "deadly weapon" during the events at the Chrapowitzkys' home and, thus, was legally sufficient to support the convictions of first degree burglary and first degree robbery (see Penal Law §§ 140.30 [1]; 160.15 [2]; People v Wilson, 252 AD2d 241, 248 [1998]). Further, although a different verdict would not have been unreasonable, when we "weigh conflicting testimony, review any

rational inferences that may be drawn from the evidence and evaluate the strength of such conclusions" (People v Danielson, 9 NY3d 342, 348 [2007]), we find that the jury's verdict with respect to the burglary and robbery at the Chrapowitzkys' home was not against the weight of the evidence (see People v Freeman, 78 AD3d 1505, 1505 [2010], lv denied 15 NY3d 952 [2010]; People v Sandoz, 248 AD2d 334, 334 [1998]).

We agree with defendant, however, that there was not legally sufficient evidence to establish that defendant possessed a "deadly weapon" during the burglary and robbery at the home occupied by King and Wilson (see Penal Law §§ 10.00 [12]; 140.30 [1]; 160.15). In contrast to the evidence with respect to the .45 caliber handgun used at the Chrapowitzsky residence, there was no evidence with regard to the use of a "deadly weapon" at the King/Wilson residence. Although King testified that he saw two men with guns, the People did not present any evidence that could lead the jury to conclude that the guns were loaded and operable (see People v Grice, 84 AD3d at 1420; People v Gulnac, 309 AD2d 1070, 1071-1072 [2003]). Nevertheless, because the evidence, viewed in a light most favorable to the People, was legally sufficient to convict defendant of the lesser included offenses of burglary in the second degree (see Penal Law § 140.25 [2]) and robbery in the second degree (see Penal Law § 160.10 [2] [b]), we modify the judgment to reduce the convictions accordingly and remit the matter to County Court for resentencing (see CPL 470.15 [2] [a]; 470.20 [4]; People v Grice, 84 AD3d at 1420; People v Gulnac, 309 AD2d at 1072).

Although defendant did not preserve the legal sufficiency challenges he now raises with regard to his two convictions for criminal possession of a weapon in the second degree, we necessarily review the evidence as to each element of the crimes as part of our weight of the evidence review (see People v Danielson, 9 NY3d at 348-349; People v McFarland, 106 AD3d 1129, 1130 [2013], lv denied 22 NY3d 1140 [2014]). A person is guilty of criminal possession of a weapon in the second degree where he or she intends to use a loaded firearm unlawfully against another person or possesses any loaded firearm outside of his or her home or business (see Penal Law § 265.03 [1] [b]; [3]; People v Capers, 129 AD3d 1313, 1314 [2015]; People v Miles, 119 AD3d

1077, 1078 [2014], lvs denied 24 NY3d 1003 [2014]).  Here, although a different verdict would not have been unreasonable, when we consider the rational inferences that could be drawn from the testimony presented and view such testimony in a neutral light (see People v McFarland, 106 AD3d at 1131), we find that the verdict as to the two counts of criminal possession of a weapon in the second degree was supported by the weight of the evidence (see People v Nelson, 128 AD3d 1225, 1227 [2015], lv denied 26 NY3d 1041 [2015]; People v Butler, 126 AD3d 1122, 1123 [2015], lv denied 25 NY3d 1199 [2015]; People v Hawkins, 110 AD3d 1242, 1242-1243 [2013], lv denied 22 NY3d 1041 [2013]).  Defendant's claim that he was entitled to a circumstantial evidence charge is not preserved for our review because he did not request such a charge or object to the charge that was given (see People v Davis, 105 AD3d 1095, 1097 [2013], lv denied 21 NY3d 1003 [2013]; People v Paige, 77 AD3d 1193, 1196 [2010], affd 16 NY3d 816 [2011]).

Finally, defendant argues, the People concede and we agree that County Court imposed an illegal period of postrelease supervision.  Defendant was found guilty of four counts of burglary in the first degree, two counts of criminal possession of a weapon in the second degree, one count of criminal possession of a weapon in the third degree and one count of robbery in the first degree, all class B felonies (see Penal Law § 70.02 [1] [a]).  County Court sentenced defendant, as a second felony offender, to an aggregate prison term of 53 years and 20 years of postrelease supervision.  This was error because, under the circumstances presented, the postrelease supervision term should have been 2½ to 5 years (see Penal Law § 70.45 [2] [f]).  Accordingly, we also remit for resentencing of the postrelease supervision (see People v Guay, 72 AD3d 1201, 1205 [2010], affd 18 NY3d 16 [2011]).

Peters, P.J., Lahtinen, Rose and Aarons, JJ., concur.

ORDERED that the judgment is modified, on the law, by reducing defendant's convictions of (1) burglary in the first degree under count 6 of the indictment to burglary in the second degree and (2) robbery in the first degree under count 8 of the indictment to robbery in the second degree; vacate the sentences imposed on said convictions, vacate the periods of postrelease supervision and matter remitted to the County Court of Columbia County for resentencing; and, as so modified, affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court