■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSHUA J. SPENCER, Appellant. [59 NYS3d 499]—

McCarthy, J.P. Appeal from a judgment of the County Court of Columbia County (Nichols, J.), rendered March 3, 2014, upon a verdict convicting defendant of the crimes of burglary in the first degree (two counts) and criminal possession of a weapon in the second degree (two counts).

Defendant, along with his codefendants Christopher Anderson and Jeremy Bost,[1] was charged in a nine-count indictment for a series of events stemming from three home invasions occurring in January 2012. After a jury trial, defendant was convicted of two counts of burglary in the first degree (counts 1 and 2) and two counts of criminal possession of a weapon in the second degree (counts 3 and 4)—all of which related to the same home invasion on January 12, 2012—and acquitted of the remaining charges related to the other home invasions. Defendant was thereafter sentenced to 15 years in prison for each conviction of burglary in the first degree, to run concurrently, and 10 years in prison for each conviction of criminal possession of a weapon in the second degree, to run concurrently with each other but consecutively to the burglary convictions. Defendant now appeals.

Defendant first contends that the evidence was legally insufficient to support his convictions and that the verdict was against the weight of the evidence. Although defendant's challenge to the legal sufficiency of the evidence is unpreserved given that he did not renew his motion to dismiss at the close of all the proof (see People v Pigford, 148 AD3d 1299, 1300 [2017]), "our weight of the evidence review includes an evaluation as to whether the elements of the crimes for which [defendant] was convicted were prove[n] beyond a reasonable doubt" (People v Mesko, 150 AD3d 1412, 1412 [2017]; see People v Morgan, 149 AD3d 1148, 1149 [2017]). Insofar as a different

1. Although defendant, Bost and Anderson underwent a combined *Mapp/Dunaway* hearing, they were each tried separately, and Bost's and Anderson's appeals have previously come before this Court (*People v Bost*, 139 AD3d 1317 [2016]; *People v Anderson*, 118 AD3d 1138 [2014], *lv denied* 24 NY3d 1117 [2015]).

verdict would not have been unreasonable, we "weigh conflicting testimony, review any rational inferences that may be drawn from the evidence and evaluate the strength of such conclusions" in order to determine whether the verdict is against the weight of the evidence (*People v Danielson*, 9 NY3d 342, 348 [2007]; *see People v Bailey*, 94 AD3d 904, 905 [2012], *lv denied* 19 NY3d 957 [2012]).

As for counts 1 and 2 of the indictment, a person is guilty of burglary in the first degree when he or she "knowingly enters or remains unlawfully in a dwelling with intent to commit a crime therein, and when, in effecting entry or while in the dwelling or in immediate flight therefrom, he [or she] or another participant in the crime . . . [i]s armed with . . . a deadly weapon; or . . . [d]isplays what appears to be a pistol . . . or other firearm" (Penal Law § 140.30 [1], [4]). With respect to counts 3 and 4 of the indictment, "[a] person is guilty of criminal possession of a weapon in the second degree where he or she intends to use a loaded firearm unlawfully against another person or possesses any loaded firearm outside of his or her home or business" (*People v Bost*, 139 AD3d 1317, 1321 [2016] [citations omitted]; *see* Penal Law § 265.03 [1] [b]; [3]). Additionally, in order to find that defendant was guilty of these charges pursuant to a theory of accessory liability, the People had to prove, beyond a reasonable doubt, that he "possessed the mental culpability necessary to commit the crime[s] charged, and that in furtherance thereof, he solicited, requested, commanded, importuned or intentionally aided" Anderson and/or Bost in their commission of the crimes as the principal actors (*People v Bailey*, 94 AD3d at 905 [internal quotation marks and citations omitted]; *see* Penal Law § 20.00). In this regard, defendant's intent may be inferred from his "actions and the surrounding circumstances" (*People v Newell*, 148 AD3d 1216, 1221 [2017] [internal quotation marks and citations omitted], *lv denied* 29 NY3d 1035 [2017]).

During the trial, the victims of the January 12, 2012 burglary—a husband and wife—testified that they were asleep in bed when the husband heard someone walking inside the house. He got up to investigate and, after turning a light on, saw two people holding handguns. The husband testified that one intruder was wearing a mask and holding an automatic handgun and the other intruder was wearing a bandana over his face and holding a pistol. The wife testified that both men were wearing dark hooded sweatshirts. The husband further testified that, at that point, he heard "a pistol being engaged" and "saw the guns coming up" as the intruders began to run

towards him. The husband barricaded himself in another room and the wife yelled at the intruders until they left the house. The victims saw a vehicle leaving their house and called the police. While the victims noted that a downstairs door remained open, none of their property was taken or disturbed.

Shortly thereafter, local police officers received a 911 dispatch call alerting them to the home invasion. They were told that the suspects were wearing dark hooded sweatshirts and that a handgun was displayed. En route to the crime scene, one of the officers spotted a car whose driver was wearing a dark hooded sweatshirt and stopped the vehicle after it turned without signaling. Although the vehicle belonged to defendant, Anderson was driving. Bost was sitting in the backseat, defendant was seated in the back middle seat and there were two female passengers, one seated in the front passenger seat and one seated in the back. One of the officers testified that there was a black mask on the floor between Bost and defendant, both of whom were also wearing dark hooded sweatshirts. After state troopers arrived at the scene, they conducted a search of Bost and discovered two handguns in his waistband, one of which was loaded. Later, a search of the vehicle revealed an unfired .45 caliber bullet located on the passenger floor. A firearms expert testified that both of the recovered weapons were operable.

Shavanyce Lewis, who was sitting in the backseat, testified that she was with Catrina Lewis—who was sitting in the front passenger seat—Bost, Anderson and defendant on January 12, 2012. She explained that they intended to go to a party in defendant's vehicle. However, Shavanyce Lewis testified that, before going to the party, Bost directed Anderson to the victims' residence and Anderson pulled defendant's car into the driveway. Although there was no conversation about what they were doing there, Shavanyce Lewis testified that defendant said, "[W]e shouldn't bring those in the house," referring to the two handguns, but that Anderson and Bost disagreed with defendant. Catrina Lewis testified that she heard a gun slide engage while they were in the car. Both women said that all three men exited the vehicle at the same time, returned to the vehicle at roughly the same time after approximately five minutes and that Anderson drove them away. Shavanyce Lewis said that, after they left the victims' home, Anderson handed his weapon to Bost and told them that he had tried to fire his handgun at one of the victims, but his gun jammed. Bost placed Anderson's weapon behind him. Shavanyce Lewis further testified that defendant did not speak after he got back into the car, but that he looked "nervous [and] scared."

Although a different verdict would not have been unreasonable, viewing the evidence in a neutral light and deferring to the jury's determinations of credibility, the evidence establishes that defendant was liable as an accomplice to Anderson and Bost in committing burglary in the first degree. Defendant's intent to burglarize the home may be reasonably inferred from his statement about the guns and the fact that he left and returned to the car at the same time as Anderson and Bost (*see People v Newell*, 148 AD3d at 1221). Additionally, while "defendant's mere presence at the scene of the crime is, standing alone, insufficient to support a finding of criminal liability," the lack of discussion between defendant, Anderson and Bost as to their purpose at the victims' home prior to exiting the vehicle indicated that defendant knew what that purpose was, his behavior after returning to the car was evidence of consciousness of guilt and, under the circumstances, the fact that he supplied the vehicle for the endeavor provided proof that he intentionally aided Anderson and Bost (*People v Knox*, 137 AD3d 1330, 1331-1333 [2016], *lv denied* 27 NY3d 1070 [2016]; *see generally People v Burrell*, 236 AD2d 240, 242 [1997]).

However, as for defendant's convictions of criminal possession of a weapon in the second degree, the conclusion that defendant was an accessory to Anderson or Bost in their unlawful possession of weapons is against the weight of the evidence (*see* Penal Law §§ 20.00, 265.03 [1] [b]; [3]). There was no proof presented during the trial that defendant ever personally possessed one of the handguns or in any way encouraged[2] or intentionally aided Anderson or Bost in their possession of the handguns (*see People v Skinner*, 190 AD2d 761, 761-762 [1993]; *People v Rayside*, 187 AD2d 680, 681 [1992], *lv denied* 81 NY2d 845 [1993]; *compare People v Gangar*, 79 AD3d 1262, 1263 [2010], *lv denied* 16 NY3d 831 [2011]).[3] Accordingly, as "there was no evidence that . . . defendant solicited, requested, commanded, importuned, or intentionally aided another individual to possess the firearm" (*People v Cummings*, 131 AD2d 865, 868 [1987]; *compare People v Carpenter*, 138 AD3d 1130, 1131-1133 [2016], *lv denied* 28 NY3d 928 [2016]), we reverse defendant's convictions of counts 3 and 4 of the indictment for criminal possession of a weapon in the second degree and dismiss said counts.

---

2. In fact, during summation, the People emphasized the "importan[ce]" of the evidence that defendant explicitly discouraged Anderson and Bost from bringing the handguns into the home.

3. There is no evidence indicating that defendant even knew that Anderson or Bost possessed handguns prior to their arrival at the victims' home.

Next, County Court did not err in denying defendant's motion to suppress the evidence obtained as a result of the traffic stop. It is "well settled that a police officer may reasonably initiate a traffic stop based upon the existence of probable cause to believe that a traffic infraction has occurred, regardless of the underlying motivation of the officer in doing so" (*People v Issac*, 107 AD3d 1055, 1057 [2013]; *see People v Robinson*, 97 NY2d 341, 348-349 [2001]). At the probable cause hearing, Donald Krapf, one of the police officers involved in the traffic stop, testified that, while responding to the report of the burglary, he observed defendant's vehicle make a turn without signaling (*see* Vehicle and Traffic Law § 1163 [d]). Moreover, Krapf's testimony established that defendant's vehicle was in close proximity to the scene of the reported burglary shortly after the report was received, and Krapf observed that the driver of the vehicle was a male wearing a hooded sweatshirt, features that matched the description that he had received of both suspects in the reported burglary. Given Krapf's testimony, and deferring to County Court's determination that the testimony was credible, the court did not err in concluding that there was probable cause to stop the vehicle (*see People v Anderson*, 118 AD3d 1138, 1140-1141 [2014], *lv denied* 24 NY3d 1117 [2015]).

Additionally, and contrary to defendant's contention, defendant was not deprived of the effective assistance of counsel. To establish the denial of the effective assistance of counsel, a "defendant must demonstrate that his [or her] attorney failed to provide meaningful representation," which includes demonstrating "the absence of strategic or other legitimate explanations for counsel's allegedly deficient conduct" (*People v Caban*, 5 NY3d 143, 152 [2005] [internal quotation marks and citations omitted]; *see People v Bullock*, 145 AD3d 1104, 1106 [2016]). Further, the standard is one of "reasonable competence, not perfect representation" (*People v Bullock*, 145 AD3d at 1107; *see People v Turner*, 5 NY3d 476, 480 [2005]). Defendant has not shown a lack of legitimate explanation for counsel's failure to challenge three jurors who acknowledged that they knew a police investigator who was a late-added witness. Each of the jurors who acknowledged knowing the investigator averred that they could remain impartial, and defendant has not shown that there was no legitimate explanation for counsel's preference to accept County Court's inquiry as to their impartiality, or, more generally, counsel's preference to continue the trial with those three jurors.

Moreover, we perceive no deficiency in defense counsel's decision not to request that County Court poll the jury after the

verdict (*see People v Johnson*, 91 AD3d 1115, 1116 [2012], *lv denied* 18 NY3d 959 [2012]). In addition, we cannot say that counsel fell short of reasonable competence by failing to request a circumstantial evidence charge, particularly where his closing argument focused on the People's failure to meet their burden of proof of establishing that defendant had engaged in any activity to aid in burglarizing the residence on January 12, 2012 or their burden in regard to the other charges against defendant. Otherwise, and examining the record as a whole, counsel exercised reasonable competence in engaging in motion practice, making opening and closing statements, cross-examining witnesses and making appropriate objections. Accordingly, defendant fails to demonstrate that he received less than meaningful representation (*see People v Kalina*, 149 AD3d 1264, 1267 [2017]).

Finally, with regard to the concurrent sentences imposed on defendant's convictions of burglary in the first degree, which were less than the maximum authorized sentences (*see* Penal Law § 70.02 [1] [a]; [3] [a]), we find no abuse of discretion or extraordinary circumstances that would warrant reduction thereof (*see People v Elmendorf*, 141 AD3d 1035, 1035-1036 [2016]). Defendant's remaining contentions have been considered and are either academic or without merit.

Garry, Egan Jr., Devine and Clark, JJ., concur. Ordered that the judgment is modified, on the facts, by reversing defendant's convictions of criminal possession of a weapon in the second degree under counts 3 and 4 of the indictment; said counts dismissed and the sentences imposed thereon vacated; and, as so modified, affirmed.