People v Haynes (2019 NY Slip Op 53941)





People v Haynes


2019 NY Slip Op 53941


Decided on November 27, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 27, 2019

109788

[*1]The People of the State of New York, Respondent,
v
Jody C. Haynes, Appellant.

Calendar Date: October 8, 2019

Before: Garry, P.J., Egan Jr., Mulvey and Aarons, JJ.


Mark Schneider, Plattsburgh, for appellant.
Karen A. Heggen, District Attorney, Ballston Spa (Mary T. Northrup of counsel), for respondent.

Karen A. Heggen, District Attorney, Ballston Spa (Mary T. Northrup of counsel), for respondent.



Egan Jr., J.
Appeal from a judgment of the County Court of Saratoga County (Murphy III, J.), rendered June 19, 2017, upon a verdict convicting defendant of the crimes of burglary in the first degree and criminal possession of a weapon in the fourth degree.
In November 2016, defendant was charged by indictment with burglary in the first degree and criminal possession of a weapon in the fourth degree based on allegations that he forced his way into the house of his coworker (hereinafter the victim) and threatened her with a knife. Following a jury trial, defendant was convicted as charged. He was thereafter sentenced to a prison term of 20 years, to be followed by five years of postrelease supervision, for his conviction of burglary in the first degree and a concurrent one-year jail term for his conviction of criminal possession of a weapon in the fourth degree. Defendant appeals.
Defendant contends that his conviction for burglary in the first degree is not supported by legally sufficient evidence as there was insufficient proof establishing that he possessed the requisite intent to commit a crime upon his entry into the victim's residence. We disagree. "In reviewing a legal sufficiency claim, we view the evidence in the light most favorable to the People and evaluate whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged" (People v Wilson, 164 AD3d 1012, 1013-1014 [2018] [internal quotation marks and citations omitted]; see People v Bleakley, 69 NY2d 490, 495 [1987]). "A person is guilty of burglary in the first degree when he [or she] knowingly enters or remains unlawfully in a building with intent to commit a crime therein, and when, in effecting entry or while in the dwelling or in immediate flight therefrom, he [or she] or another participant in the crime . . . [u]ses or threatens the immediate use of a dangerous instrument" (Penal Law § 140.30 [3]). In turn, "[a] person 'enters or remains unlawfully' in or upon premises when he [or she] is not licensed or privileged to do so" (Penal Law § 140.00 [5]). As relevant here, "a defendant's intent to commit a crime may be properly inferred from, among other things, the circumstances of the entry, his or her unexplained presence in the building and his or her actions and statements while on the premises" (People v Saylor, 173 AD3d 1489, 1491 [2019] [internal quotation marks, brackets and citations omitted]; see People v Lewis, 5 NY3d 546, 552 [2005]; People v Spencer, 152 AD3d 863, 864 [2017], lv denied 30 NY3d 983 [2017]).
The evidence introduced at trial established that defendant and the victim were coworkers and had known each other for approximately two years prior to the subject incident. Over that time, the victim had rebuffed numerous requests by defendant to go on a date, but they nevertheless remained friends on Facebook, with defendant often sending the victim messages via Facebook Messenger.[FN1] Approximately five days prior to the subject incident, the victim responded to one of defendant's messages by telling him, for the first time, that she had a boyfriend. Undeterred, defendant continued to message the victim attempting to ascertain, among other things, the identify of her boyfriend, while also making inquiry into whether any members of the victim's family were generally home during the day when she was not working. On the morning of June 7, 2016, less than an hour after defendant and the victim had finished working an overnight shift (7:00 p.m. to 7:00 a.m.), defendant started messaging the victim. His messages became increasingly more agitated when the victim did not respond to all of his questions, and he ultimately told the victim that she was "fake," that she should "unfriend" and "block" him on Facebook and that he "want[s] nothing to d[o] with [the victim] anymore."
Following receipt of these messages, the victim went and dropped her son off at school before returning home to get ready to meet a friend to go shopping. As she was getting ready, her doorbell rang numerous times. Although she looked out her bedroom window and did not see anyone outside, she nevertheless checked her front door. Immediately upon unlocking the door, defendant pushed the door in, grabbed her sweater with his left hand, pushed her down on a bench inside the doorway and pulled a steak knife out of his pocket with his right hand and held it to her neck and chest area. Defendant subsequently dropped the knife, whereupon the victim was able to calm him down, convince him that she was not going to call the police and that he had to leave because she was going to meet a friend. The victim reported the incident to police a few hours later and, after the police located defendant at his home, he agreed to participate in a police interview.
Contrary to defendant's contention, there was ample evidence introduced at trial demonstrating that he had the intent to commit a crime upon his entry into the victim's home. In his interview with police, defendant candidly admitted that he was angry with the victim that morning because she would not respond to his messages and that he subsequently grabbed a steak knife from his home and drove, uninvited, to the victim's house. Defendant had never previously been to the victim's house nor been provided the address, but ascertained the location from looking at photographs on Facebook and confirmed the address when he observed her red Jeep Grand Cherokee parked in the driveway outside her house. Defendant did not park in the victim's driveway and chose to park on the side of the street a few doors down from the victim's house, walked to her front door, rang the doorbell and, upon entering the house, pulled a steak knife out of his pocket. Despite admitting to the underlying conduct, defendant nevertheless maintains that he did not intend to harm the victim and that he only entered her house to talk with her.[FN2] When viewed in a light most favorable to the People, we find that the evidence at trial provided a valid line of reasoning and permissible inferences from which a rational jury could conclude that defendant committed burglary in the first degree when he drove to the victim's home armed with a steak knife, pushed in her door, grabbed her, forced her down on a bench and pulled out the knife and threatened her with it (see People v Womack, 143 AD3d 1171, 1172 [2016], lv denied 28 NY3d 1151 [2017]; People v Richards, 290 AD2d 584, 585-586 [2002], lv denied 98 NY2d 654 [2002]).
Defendant was not deprived of a fair trial based upon the admission of certain Molineux evidence.[FN3] "Evidence of uncharged crimes or prior bad acts may be admitted where they fall within the recognized Molineux exceptions — motive, intent, absence of mistake, common plan or scheme and identity — or where such proof is inextricably interwoven with the charged crimes, provides necessary background or completes a witness's narrative and, further, the trial court determines that the probative value of such evidence outweighs its prejudicial effect" (People v Smith, 173 AD3d 1441, 1444 [2019] [internal quotation marks, brackets and citations omitted], lvs denied 34 NY3d 951, 954 [2019]). Here, County Court's admission of certain statements made by defendant to another coworker on the night immediately prior to the subject incident, wherein he allegedly called the victim "a whore," were relevant to establishing defendant's motive and intent and were inextricably interwoven with the charged crime, as it provided relevant and necessary context with regard to defendant's state of mind, particularly his anger toward and fixation with the victim, and was more probative than it was prejudicial (see People v Pitt, 170 AD3d 1282, 1284 [2019], lv denied 33 NY3d 1072 [2019]; People v Westerling, 48 AD3d 965, 967 [2008]).
Defendant's contention that County Court erred when it denied his request for a jury charge on the lesser included offense of criminal trespass in the second degree is without merit. Having reviewed the evidence submitted at trial, we agree with County Court that there was no reasonable view of the evidence set forth on the record demonstrating that defendant had any noncriminal purpose for forcibly entering the victim's home, brandishing a steak knife and threatening her with it (see People v Morrison, 127 AD3d 1341, 1344-1345 [2015], lv denied 26 NY3d 932 [2015]; People v Sturdevant, 74 AD3d 1491, 1493 [2010], lv denied 15 NY3d 810 [2010]).
Finally, "the mere fact that a sentence imposed after trial is greater than that offered in connection with plea negotiations is not proof positive that defendant was punished for asserting his right to trial" (People v Malloy, 152 AD3d 968, 971 [2017] [internal quotation marks, brackets and citations omitted], lv denied 30 NY3d 981 [2017]). Given defendant's criminal record, particularly his escalating history of criminal conduct towards women, we perceive no abuse of discretion or extraordinary circumstances that warrant a reduction of his sentence in the interest of justice (see People v Grayson, 167 AD3d 1076, 1076 [2018]; People v Rotger, 129 AD3d 1330, 1333 [2015], lvs denied 26 NY3d 1011 [2015], 27 NY3d 1005 [2016]). Defendant's further assertion that the sentence imposed was the product of vindictiveness is belied by the record, as County Court expressly credited defendant's expressions of remorse in sentencing him to a prison term less than the maximum sentence allowable by law.
Garry, P.J., Mulvey and Aarons, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: The victim had no interest in knowing defendant outside of work and the only communication she had with him in that regard was via Facebook Messenger. She testified that the tone and content of defendant's messages often made her feel uncomfortable and she would often speak with him at work and tell him that she was not interested in receiving such messages.

Footnote 2: After leaving the victim's house, defendant sent the victim a message at 11:15 a.m. stating, "IM SOO SORRY."

Footnote 3: To the extent that defendant challenges County Court's Molineux ruling on hearsay grounds, said challenge is unpreserved for our review as defendant failed to object on this basis before County Court (see generally People v Hilton, 166 AD3d 1316, 1321 [2018], lv denied 32 NY3d 1205 [2019]; see also People v Sukhdeo, 103 AD3d 673, 674 [2013], lv denied 21 NY3d 914 [2013]).