People v Goodman (2024 NY Slip Op 05249)

People v Goodman

2024 NY Slip Op 05249

Decided on October 24, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 24, 2024

113488
[*1]The People of the State of New York Respondent,
v
Antonio T. Goodman, Appellant.

Calendar Date:September 11, 2024

Before:Aarons, J.P., Lynch, Ceresia, McShan and Mackey, JJ.

Mitchell S. Kessler, Cohoes, for appellant.
Mary E. Saitta, Special Prosecutor, Binghamton, for respondent.

Aarons, J.P.
Appeal from a judgment of the County Court of Broome County (Kevin P. Dooley, J.), rendered August 20, 2021, upon a verdict convicting defendant of the crime of criminal possession of a weapon in the second degree (two counts).
In June 2020, defendant, accompanied by his brother, Antwan Goodman (hereinafter the codefendant) went to the home of the victim, where an altercation ensued between defendant and the victim. The altercation ended when the codefendant fired the handgun in his possession, striking the victim and causing injuries. In connection therewith, defendant and the codefendant were jointly charged by indictment; as relevant here, defendant was charged with two counts of criminal possession of a weapon in the second degree. The codefendant pleaded guilty to one count of second-degree criminal possession of a weapon in satisfaction of so much of the joint indictment as was against him and was severed from the case. The case against defendant proceeded to a four-day jury trial on a theory of accomplice liability (see Penal Law § 20.00). Defendant was found guilty as charged, and County Court thereafter sentenced him, as a second felony offender with a nonviolent predicate, to 10 years of imprisonment, to be followed by five years of postrelease supervision. Defendant appeals.
Defendant contends that his conviction is against the weight of the evidence. As relevant here, "[a] person is guilty of criminal possession of a weapon in the second degree when . . . with intent to use the same unlawfully against another, such person . . . possesses a loaded firearm; or . . . such person possesses any loaded firearm" (Penal Law § 265.03 [1] [b]; [3]; see People v Spencer, 152 AD3d 863, 864 [3d Dept 2017], lv denied 30 NY3d 983 [2017]; People v Bost, 139 AD3d 1317, 1321 [3d Dept 2016]; see also People v Walker, 227 AD3d 1129, 1130 [3d Dept 2024]). Accomplice liability requires evidence that defendant acted with the mental culpability required for the offense and that defendant solicited, requested, commanded, importuned or intentionally aided the codefendant in engaging in that conduct (see Penal Law §§ 20.00, 265.03 [1] [b]; [3]). "Accordingly, accomplice liability requires, at a minimum, awareness of the proscribed conduct and some overt act in furtherance of such" (People v Carpenter, 138 AD3d 1130, 1131 [2d Dept 2016] [internal quotation marks, brackets and citation omitted], lv denied 28 NY3d 928 [2016]).
The trial evidence established that, earlier in the day of defendant's alleged crimes, defendant refused to return a pocket knife to the victim's 15-year-old friend, leading to an altercation between defendant and the victim. The altercation ended when the victim sprayed defendant with mace or pepper spray. After receiving treatment from paramedics, defendant declined to press charges and indicated to police that he would settle the matter himself. That evening, defendant and the codefendant walked to the victim's house where the friend was [*2]located and returned the knife to her. According to the testimony of the victim and the friend, the victim retrieved photographs from inside the house and showed them to defendant to remind him of their shared friends and family members. At that point, defendant unsuccessfully tried to punch the victim. According to the victim, defendant said to the codefendant, "Give me that," and the codefendant displayed the subject handgun, which was tucked into his waistband. The friend ran into the house yelling that the codefendant had a gun. The victim's father, who was at the house at the time, said to call the police. The victim testified that, upon hearing the police would be called, the codefendant walked away with the handgun. As relayed to the jury by the victim's father, however, defendant told the codefendant to leave the scene because he — the codefendant — had the gun.
Meanwhile, the victim grabbed a metal level and began beating defendant with it, and defendant called on the codefendant for help. The codefendant returned to the scene firing the subject handgun, and the victim ran behind a fence and dialed 911. While on the phone with emergency personnel, the victim was struck in the side of his chest by a bullet fired through the fence by the codefendant.
The codefendant testified that, after defendant refused to press charges against the victim based on their earlier altercation and told police he would resolve the matter on his own, the codefendant retrieved the handgun from his sister's house. The codefendant then went back to defendant's house and, without telling defendant he had the gun, encouraged defendant to go settle his differences with the victim and return the knife to the friend. The only reason he brought the handgun, the codefendant explained to the jury, was because he had heard that the victim had a reputation as a dangerous person, saw the victim spray mace or pepper spray on defendant earlier that day and wanted to protect himself and his younger brother, i.e., defendant.
An acquittal on this record would not have been unreasonable, and so we must "weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Flower, 173 AD3d 1449, 1450 [3d Dept 2019] [internal quotation marks and citations omitted], lv denied 34 NY3d 931 [2019]; see People v Lorenz, 211 AD3d 1109, 1109 [3d Dept 2022], lv denied 39 NY3d 1112 [2023]). This review requires us to consider the evidence in a neutral light and defer to the jury's credibility assessments (see People v Moore, 223 AD3d 1085, 1087 [3d Dept 2024], lv denied 41 NY3d 1003 [2024]; People v Cason, 203 AD3d 1309, 1310-1311 [3d Dept 2022], lv denied 38 NY3d 1132 [2022]).
We agree with defendant that his conviction is against the weight of the evidence. Preliminarily, the jury could rely on testimony by the People's witnesses [*3]describing defendant's conduct during the incident as evidence that defendant was aware the codefendant possessed the subject handgun before the codefendant displayed it to those witnesses (compare People v Walker, 227 AD3d at 1132). Still, accessorial liability requires evidence directed at the equally important actus reus element, i.e., that " 'the accomplice must have intentionally aided the principal in bringing forth a result' " (People v Carpenter, 138 AD3d at 1131, quoting People v Kaplan, 76 NY2d 140, 146 [1990]). Here, even though "defendant's conduct suggested that he may have known that [the codefendant] had a gun, there was no proof that . . . defendant solicited, requested, commanded, importuned, or intentionally aided him to possess the gun" (People v Skinner, 190 AD2d 761, 762 [2d Dept 1993]; see People v Spencer, 152 AD3d at 866; People v Farley, 150 AD3d 1627, 1629 [4th Dept 2017]; People v Rayside, 187 AD2d 680, 681 [2d Dept 1992], lv denied 81 NY2d 845 [1993]; People v Cummings, 131 AD2d 865, 868 [2d Dept 1987]; compare People v Carpenter, 138 AD3d at 1133-1134; People v Gangar, 79 AD3d 1262, 1263 [3d Dept 2010], lv denied 16 NY3d 831 [2011]). What defendant did or said in furtherance of the codefendant's possession of the subject handgun was left to the jurors' imaginations (compare People v Lall, 223 AD3d 1098, 1106 [3d Dept 2024], lv denied 41 NY3d 984 [2024]). Such speculation cannot be the basis for defendant's guilt beyond a reasonable doubt (see People v Walker, 227 AD3d at 1131-1133).
Accordingly, we reverse the judgment of conviction and dismiss the indictment against defendant (see People v Croley, 163 AD3d 1056, 1060 [3d Dept 2018]). In light of our decision, defendant's remaining contentions are academic.
Lynch, Ceresia, McShan and Mackey, JJ., concur.
ORDERED that the judgment is reversed, on the facts, and indictment dismissed.