People v Bowden

2026 NY Slip Op 02003

April 2, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

The People of the State of New York, Respondent,

v

Leroy Bowden, Also Known as Bar and Barshawn, Appellant.

Decided and Entered:April 2, 2026

112754 CR-24-1340

Calendar Date: February 17, 2026

Before: Aarons, J.P., Pritzker, Reynolds Fitzgerald, Fisher And Mackey, JJ.

G. Scott Walling, Slingerlands, for appellant, and appellant pro se.

Robert M. Carney, District Attorney, Schenectady (Peter H. Willis of counsel), for respondent.

[*1]

Fisher, J.

Appeals (1) from a judgment of the Supreme Court (Kathleen Hogan, J.), rendered August 25, 2020 in Schenectady County, upon a verdict convicting defendant of the crimes of assault in the first degree, gang assault in the second degree, burglary in the second degree (four counts) and criminal possession of a weapon in the second degree (two counts), and (2) by permission, from an order of the County Court of Schenectady County (Matthew Sypniewski, J.), entered April 15, 2024, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.

In the early morning hours of December 26, 2018, the victim was shot during a physical altercation inside the entrance hallway of an apartment located in the City of Schenectady. The ensuing police investigation revealed that the victim had a heated exchange with a man who left the premises and returned with a group of men, leading to a physical fight and the shooting. The victim sustained nonfatal wounds and identified one of the men in the group, which led to the discovery of the remaining individuals — including defendant, who had been seen earlier that evening at a nearby residence with a semiautomatic handgun. Although the police did not recover a firearm in connection with this shooting, they found a single shell casing which was determined to have been ejected from a semiautomatic weapon.

Thereafter, defendant and two codefendants were charged by indictment with attempted murder in the second degree (count 1), assault in the first degree (count 2) (see Penal Law § 120.10 [1]), gang assault in the second degree (count 3) (see Penal Law § 120.06), four counts of burglary in the second degree (counts 4-7) (see Penal Law § 140.25 [1] [a]-[d]) and two counts of criminal possession of a weapon in the second degree (counts 8-9) (see Penal Law § 265.03 [1] [b]; [3]).FN1 The People alleged that defendant was an accomplice to counts 1-7 because he provided the handgun that his codefendant used to shoot the victim, and was the principal actor to counts 8-9 for being the person who initially possessed the handgun. Following a jury trial, defendant was acquitted on count 1 and convicted of the remaining charges. Supreme Court (Hogan, J.) sentenced him, as a second felony offender, to 20 years in prison, to be followed by five years of postrelease supervision, for his conviction of assault in the first degree, and to lesser concurrent terms of incarceration on the remaining counts. Defendant then filed a CPL article 440 motion to vacate his conviction, which County Court (Sypniewski, J.) denied, without a hearing. Defendant appeals from the judgment of conviction and, by permission, the order denying his CPL article 440 motion.

Defendant contends that the verdict is not supported by legally sufficient evidence and that it is contrary to the weight of the evidence because the People failed to proffer any competent evidence that he provided the handgun used by his codefendant [*2]in the shooting (counts 2-7) or that the handgun he was seen with earlier that evening was operable (counts 8-9). "In conducting a legal sufficiency analysis, we view the facts in the light most favorable to the People and examine whether there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (People v Smith, 237 AD3d 1367, 1369 [3d Dept 2025] [internal quotation marks and citations omitted], lv denied 43 NY3d 1059 [2025]). Whereas in reviewing the weight of the evidence, "we view the evidence in a neutral light and determine first whether a different verdict would have been unreasonable and, if not, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Warr, 237 AD3d 1262, 1263 [3d Dept 2025] [internal quotation marks and citations omitted], lv denied 43 NY3d 1059 [2025]). "Since there is no legal distinction between criminal liability as a principal or as an accessory to a crime, when one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he or she solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct" (People v Rivera, 212 AD3d 942, 945 [3d Dept 2023] [internal quotation marks and citations omitted], lv denied 39 NY3d 1113 [2023]).

As charged to the jury, counts 2 through 7 required the People to prove that defendant either committed the offense or intentionally aided another person to commit such offense (see Penal Law § 20.00), with an element of each count including a deadly weapon or dangerous instrument (counts 2, 4 and 6), serious physical injury to another (count 3), physical injury to any person who is not a participant in the crime (count 5), or the display of what appeared to be a firearm (count 7). Relating to counts 8 and 9, the People were required to prove that defendant possessed any loaded firearm outside of his home or place of business (count 8), or with intent to use such firearm unlawfully against another (count 9). Pertinently, to establish criminal possession of a weapon under Penal Law § 265.03, "the People must prove that the weapon is operable" (People v Longshore, 86 NY2d 851, 852 [1995]; see People v Taylor, 207 AD3d 806, 808 [3d Dept 2022], lv denied 39 NY3d 942 [2022]).

The evidence at trial established that the victim was watching his and his former girlfriend's son at her apartment while she went out with friends. The former girlfriend testified that she went to a local bar with one of the codefendants, where his mother and brother were with defendant and the other codefendant. The group left the bar and returned to the mother's residence, where two [*3]witnesses testified that they observed defendant with a semiautomatic handgun. One of the codefendants left the residence to drop off the former girlfriend at her apartment, where he ended up getting into a verbal argument with the victim. Both men were making threats to the other before the former girlfriend split them up and took the victim inside. According to the victim, the codefendant threatened to come back to shoot him. The former girlfriend testified that she called the other codefendant to apologize and "defuse anything from going further," but that she ended the phone call after the victim began yelling threats into the phone and began physically "tussling" with her over the phone. The codefendant testified that he was still at his mother's residence when the former girlfriend called him "in disarray," and that he decided to walk to her apartment because it sounded like she was "having a problem." He further testified that her apartment was only about a minute away and that he left without speaking to anyone because he was still on the phone.

The video surveillance footage depicts the codefendants and the brother walking down the sidewalk and stopping in front of the apartment — gesturing to the apartment while one of the codefendants appears to be on his phone. Defendant arrived less than a minute later and walked up a neighbor's driveway before reaching the group, moving out of frame. The codefendants then approached the apartment by walking through a gate and disappeared off screen. A short time later, defendant and one of the codefendants separately reappeared and converged on the sidewalk with the brother. Defendant and the codefendant brushed into each other as defendant appeared to pull his hand out of his sweatshirt/jacket pocket and extend his arm toward the codefendant — who immediately walked back toward the apartment and off screen again. Concurrent with events from the footage, the victim testified that he opened the apartment door, taunted the group to come fight him and was charged by one of the codefendants followed by two other men. He testified that his struggle with one of the codefendants spilled into the hallway as the former girlfriend tried to break up the fight, which is when he pulled out his utility knife and began swinging it defensively — stabbing the codefendant but accidently striking the former girlfriend. The victim was then shot by the codefendant who dropped off the former girlfriend and brushed up against defendant, and the group ran out of the hallway. Law enforcement officers testified as to their response and investigation, including that the recovered shell casing was determined to have come from a semiautomatic weapon and that defendant did not possess the requisite permit for a handgun.

Based on the foregoing, when viewing this evidence in a light most favorable to the People, we conclude that a valid line of reasoning existed through which the jury could have found that defendant's conduct met [*4]the elements of each crime for which he was convicted (see People v Gaylord, 224 AD3d 1169, 1172 [3d Dept 2024], lv denied 42 NY3d 926 [2024]). Defendant was the only individual seen before the shooting with a gun — a weapon consistent with the shell casing found at the scene. The video evidence also confirmed his presence with the codefendants outside the apartment before the shooting, coming together closely with the codefendant who ultimately shot the victim. Drawing all inferences in favor of the People and their theory that this brief huddle was when defendant provided his gun to the shooter, the verdict is supported by legally sufficient evidence (see People v Durham, 226 AD3d 1099, 1101 [3d Dept 2024], lv denied 42 NY3d 926 [2024]; People v Rivera, 212 AD3d at 946-947).

But when viewing the evidence in a neutral light, we cannot say that the weight of the evidence supports the verdict (see People v Spencer, 152 AD3d 863, 866 [3d Dept 2017], lv denied 30 NY3d 983 [2017]). The crux of the People's accomplice theory supporting counts 2 through 7 against defendant was that the video surveillance footage depicted the gun being handed off before the shooting. However, the video footage is dark and pixelated, and the brother's body obscures part of the interaction, making it impossible to discern whether defendant and the codefendant exchanged a handgun — let alone anything — without resorting to speculation, which cannot be the basis for defendant's guilt beyond a reasonable doubt (see People v Goodman, 231 AD3d 1366, 1369 [3d Dept 2024]). Nor is there anything in the record to suggest that this codefendant was aware that defendant had a gun, as none of the witnesses testified that he was present when defendant had displayed the gun at the mother's residence. To this point, the codefendant's lack of knowledge combined with the testimony that he threatened to return and shoot the victim creates the reasonable inference that he already had access to a gun of his own. Accordingly, given the lack of record support to establish beyond a reasonable doubt that defendant solicited, requested, commanded, importuned or intentionally aided another individual to possess and use a firearm in commission of the offenses charged under counts 2 through 7, we reverse these convictions as against the weight of the evidence (see id.; People v Spencer, 152 AD3d at 866).FN2

Relating to the weapon charges under counts 8 and 9, multiple witnesses testified that defendant was seen with a handgun only while at the mother's residence. However, since the evidence fails to demonstrate that the shooting was committed with the same gun, it so follows that the record also fails to establish beyond a reasonable doubt that defendant intended to use the gun he was seen with "unlawfully against another" as charged by the indictment (Penal Law § 265.03 [1] [b]). Further, although defendant did not possess the requisite gun permit and was outside of his home or place of business, the [*5]People cannot establish operability of the handgun that defendant was seen with at the mother's residence before the shooting either (see Penal Law § 265.03 [3]; People v Longshore, 86 NY2d at 852). Accordingly, defendant's convictions of counts 8 and 9 are also against the weight of the evidence and therefore must be reversed as well (see People v Pizarro, 151 AD3d 1678, 1682 [4th Dept 2017], lv denied 29 NY3d 1132 [2017]; People v Amato, 99 AD2d 495, 496 [2d Dept 1984]).

In light of the People's failure to establish any of the counts beyond a reasonable doubt, the judgment of conviction must be reversed and the indictment against defendant dismissed (see People v Goodman, 231 AD3d at 1369).Based on the foregoing, we need not consider defendant's remaining contentions.

Aarons, J.P., Pritzker, Reynolds Fitzgerald and Mackey, JJ., concur.

ORDERED that the judgment is reversed, on the facts, indictment dismissed, and matter remitted to the County Court of Schenectady County for further proceedings pursuant to CPL 470.45.

ORDERED that the appeal from the order is dismissed, as moot.

Footnotes

Footnote 1: Although jointly charged, defendant successfully moved for a separate trial.

Footnote 2: The People's alternative argument that defendant was a principal actor for the burglary charges (counts 4 through 7) also fails, as the video footage — while showing defendant moving off camera and toward the apartment — does not establish that he ever went inside the apartment building. The former girlfriend also testified that defendant did not enter the hallway, and although the victim testified that he saw a person in the hallway which he claimed was defendant, he ultimately described the clothing and overall physical attributes consistent with the brother.