■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ELLIOT HORSEY, Appellant. [758 NYS2d 695] —Spain, J. Appeal from a judgment of the Supreme Court (Lamont, J.), rendered September 26, 2001 in Albany County, upon a verdict convicting defendant of the crime of robbery in the first degree.

Following a jury trial, defendant was convicted of robbery in the first degree for his participation in the May 11, 2000 armed robbery of a bank located at Loudon Plaza, a small shopping plaza in the City of Albany. The People's proof at trial established that defendant came to Albany that day from the New York City area with David Kirton and James Jones. After going to the apartment of friends, defendant drove to Loudon Plaza and backed the car into a parking space next to a dumpster behind the plaza facing out. Defendant waited while Kirton and Jones exited the vehicle, went around to the front entrance of the bank and entered—covering their faces with ski masks and hooded sweatshirts—and forcibly stole money while brandishing guns. Kirton and Jones fled to defendant's awaiting car, with guns and masks still evident, and defendant drove out of the plaza, tires screeching along an access road, and through a red light heading toward a nearby interstate highway. When observed by State Police on the interstate, defendant engaged in a high speed chase during which Kirton threw a gun out of the car window and Jones jumped out. Defendant's flight ultimately ended upon his collision with another vehicle, and he was apprehended by State Police while attempting to flee on foot. Transported to an Albany police station, defendant gave a signed written statement and a tape-recorded statement essentially asserting that he did not know his accomplices' precise plans that day, although he suspected that they had weapons and were planning a robbery.

Upon his conviction of robbery in the first degree, Supreme Court sentenced defendant as a second felony offender to a

determinate term of 25 years' imprisonment. On defendant's appeal, we affirm, finding no merit to any of his claims.

Contrary to defendant's first claim, the uncontroverted testimony adduced at the *Huntley* hearing fully supports the denial of suppression based upon the conclusion that the Albany police detectives provided defendant with *Miranda* warnings which defendant indicated he understood and voluntarily waived, prior to their interrogation. Thereafter, defendant voluntarily gave and signed a written statement also containing the *Miranda* warnings (*see People v Witherspoon*, 66 NY2d 973, 974 [1985]), and the detectives repeated the warnings prior to recording defendant's second statement— made at defendant's request—which also reflects defendant's receipt and knowing waiver of warnings at every stage of police questioning. Defendant was never interrogated by State Police, and all questioning by the Albany police was preceded by *Miranda* advisements. Thus, his reliance upon case law regarding unwarned custodial statements is misplaced and no basis for suppression of his statements exists (*see People v Bethea*, 67 NY2d 364 [1986]; *People v Chapple*, 38 NY2d 112 [1975]; *cf. People v Strawbridge*, 299 AD2d 584, 589 [2002]).

Defendant also assigns error to the suppression court's refusal to redact from his lengthy tape-recorded statement his remark that, "because of my past history, I knew I couldn't be caught in a car with a gun," which he offered to explain why he accelerated the getaway car after Kirton threw the gun out the car window. To the extent that defendant's "past history" reference suggested prior criminal conduct or bad acts, it was inextricably interwoven with admissible statements which directly related to the crimes charged (*see People v Vails*, 43 NY2d 364, 368-369 [1977]; *see also People v Ely*, 68 NY2d 520, 531 [1986]; *People v Crandall*, 67 NY2d 111, 116-117 [1986]; *People v Ward*, 62 NY2d 816, 818 [1984]) and was, as such, "explanatory of the acts done or words used in the otherwise admissible part of the evidence" (*People v Ventimiglia*, 52 NY2d 350, 361 [1981]).

Further, viewing the evidence in the light most favorable to the People, we find that the trial evidence was legally sufficient to permit a trier of fact to conclude that defendant was guilty as an accomplice of robbery in the first degree (*see People v Contes*, 60 NY2d 620, 621 [1983]; *see also* Penal Law § 160.15 [2]). Rather than showing mere unwitting presence at the scene, the evidence compellingly proved that defendant directly and knowingly aided and participated in this robbery, and his conduct and the surrounding circumstances—including his

statements to police—fully support the inference that he knew of his cohorts' plan to forcibly steal property and shared their intent to do so (*see People v Valderrama*, 285 AD2d 902, 903-904 [2001], *lv denied* 97 NY2d 659 [2001]; *see also People v Jackson*, 44 NY2d 935 [1978]; *People v Smalls*, 289 AD2d 152 [2001], *lv denied* 98 NY2d 641 [2002]; *People v Gage*, 259 AD2d 837, 838-839 [1999], *lv denied* 93 NY2d 970 [1999]; *People v Huntley*, 259 AD2d 843, 846 [1999], *lv denied* 93 NY2d 972 [1999]; *People v Johnston*, 182 AD2d 707, 708 [1992], *lv denied* 80 NY2d 833 [1992]). The People were not required to prove that defendant personally possessed the deadly weapon or was aware in advance that Kirton or Jones were armed (*see People v Gage, supra*; *see also People v Lewis*, 277 AD2d 1010 [2000], *lv denied* 96 NY2d 736 [2001]). Thus, there is no merit to defendant's claim that there was an inconsistency in the jury's verdict acquitting him of criminal use of a firearm in the first degree (Penal Law § 265.09 [1] [a]), but convicting him of robbery in the first degree.

Defendant's contention that count one was duplicitous is incorrect (*see* CPL 200.30), and was not timely raised in a pretrial motion (*see* CPL 210.20 [3]). In any event, count one properly charged only the statutory elements of Penal Law § 160.15 (2)—forcibly stealing while he or another participant was armed with a deadly weapon—and then, in language almost verbatim from the Penal Law § 160.00 definition of robbery, specified that the forcible stealing was "by means of the threatened immediate use of physical force," consisting of threatening to shoot the bank teller and others present. It did not include the different aggravating factor contained in subdivision (3) of Penal Law § 160.15.

Finally, in view of defendant's extensive criminal history and knowing participation in this violent crime of greed, we find no extraordinary circumstances or abuse of discretion warranting reduction of the sentence in the interest of justice (*see People v Dolphy* 257 AD2d 681, 685 [1999], *lv denied* 93 NY2d 872 [1999]). While we have considered that this represents the maximum second felony offender sentence for this crime, that defendant did not himself enter the bank and other mitigating factors, we nonetheless find that this crime and defendant's sustained actions in particular exposed many innocent people— both in the bank and on public roads—as well as law enforcement officers to great danger and trauma militating against affording defendant any leniency in sentencing.

Defendant's remaining contentions are either unpreserved or without any merit.

Cardona, P.J., Carpinello, Lahtinen and Kane, JJ., concur. Ordered that the judgment is affirmed.