*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered: March 3, 2016                    107198
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                        Respondent,

        v                                    MEMORANDUM AND ORDER

SLOMAN J. KNOX JR.,
                        Appellant.
_____

Calendar Date:   January 5, 2016

Before:  McCarthy, J.P., Egan Jr., Lynch and Clark, JJ.

_____

        Frank A. Sarat, Homer, for appellant, and appellant
pro se.

        Weeden A. Wetmore, District Attorney, Elmira (John R.
Thweatt of counsel), for respondent.

_____

Egan Jr., J.

        Appeal from a judgment of the County Court of Chemung
County (Hayden, J.), rendered October 30, 2014, upon a verdict
convicting defendant of the crimes of attempted robbery in the
first degree and attempted robbery in the second degree.

        Defendant was indicted and charged — as an accomplice —
with attempted robbery in the first degree and attempted robbery
in the second degree.  The charges stemmed from an incident that
began on the morning of August 15, 2013 when defendant agreed to
accompany Robert Rouille for a car ride and culminated in
Rouille's failed attempt to collect on a drug debt from one
Francis Backus.  Following a jury trial, defendant was convicted
on both counts and thereafter was sentenced, as a second felony

offender, to five years in prison followed by five years of postrelease supervision for his conviction of attempted robbery in the first degree and three years in prison followed by five years of postrelease supervision for his conviction of attempted robbery in the second degree, said sentences to run concurrently. Defendant now appeals.[1]

Defendant's primary argument upon appeal is that the verdict is not supported by legally sufficient evidence – specifically with respect to the issue of defendant's larcenous intent. Insofar as is relevant here, "[a] person is guilty of attempted robbery in the first degree when, with intent to forcibly steal property, he or she engages in conduct which tends to do so, 'and when, in the course of the attempted commission of the crime or of immediate flight therefrom, he or she or another participant in the crime . . . displays what appears to be a . . . firearm'" (People v Osinowo, 28 AD3d 1011, 1012 [2006] [brackets omitted], lv denied 7 NY3d 792 [2006], quoting Penal Law § 160.15 [4]; see Penal Law § 110.00). Similarly, a person is guilty of attempted robbery in the second degree when he or she undertakes to forcibly steal property and, "[i]n the course of the commission of the crime or of immediate flight therefrom, he [or she] or another participant . . . [c]auses physical injury to any" nonparticipant in the crime (Penal Law § 160.10 [2] [a]; see Penal Law § 110.00; People v Zabala, 290 AD2d 578, 580 [2002], lv denied 97 NY2d 735 [2002]). A defendant may be found guilty of these crimes "under a theory of accomplice liability when such defendant, with the intent to forcibly steal property, 'solicits, requests, commands, importunes, or intentionally aids another person to engage in [such] conduct'" (People v Vicioso, 116 AD3d 1250, 1251 [2014] [brackets omitted], quoting Penal Law § 20.00; see People v Bush, 75 AD3d 917, 918 [2010], lv denied 15 NY3d 919 [2010]; cf. People v Daniels, 24 AD3d 970, 971 [2005], lv denied 6 NY3d 811 [2006]). While it is true that a defendant's mere presence at the scene of the crime is, standing alone, insufficient to support a finding of criminal liability (see People v Cabey, 85 NY2d 417, 421 [1995]; People v Chardon,

_____

[1]  According to the People, Rouille previously pleaded guilty to undisclosed charges related to this incident.

83 AD3d 954, 957 [2011], lv denied 18 NY3d 857 [2011]; see also
People v Robinson, 53 AD3d 681, 683 n [2008], lv denied 11 NY3d
794 [2008]), it is equally true that the requisite intent "may be
inferred from a defendant's conduct and from the surrounding
circumstances" (People v Bush, 75 AD3d at 918; see People v
Chaplin, 134 AD3d 1148, 1151 [2015]; People v Rupert, 118 AD3d
1126, 1127 [2014]; People v Vicioso, 116 AD3d at 1251; People v
Callicut, 101 AD3d 1256, 1258 [2012], lvs denied 20 NY3d 1096,
1097 [2013]).

Here, Backus testified that he left his house on the
morning in question at approximately 9:00 a.m. intending to walk
to a local store. Almost immediately, a gray four-door sedan
pulled up alongside him; defendant, whom Backus had known for
three or four years, was driving, and Rouille, whom Backus had
known for approximately 20 years, was the front-seat passenger.
According to Backus, he had been involved in drug transactions
with Rouille for the past month or so. Consistent with their
established procedure, Rouille would "front" drugs — usually
marihuana — to Backus on credit with the understanding that
Backus would pay him as soon as possible.[2] On this particular
morning, Backus owed Rouille $300 for marihuana.

Backus testified that Rouille told him to get in the car;
Backus complied and climbed into the rear passenger seat of the
vehicle. Rouille then inquired as to whether Backus had the
money; when Backus indicated that he did not have the $300 that
he owed, Rouille asked Backus where his girlfriend could be found
and thereafter told defendant to drive to the girlfriend's
residence.[3] Backus testified that, while en route to his
girlfriend's house, Rouille retrieved a gun from underneath the
driver's seat — specifically, a large-caliber snub-nose revolver

_____

[2] Backus testified that it typically took him one week to
secure the funds to pay Rouille, and he acknowledged that he had
experienced difficulties paying Rouille in the past.

[3] The record suggests that Backus' girlfriend also had
purchased drugs from Rouille in the past and may have owed
Rouille money at this point in time.

— and informed Backus, "If I don't get my money today, either you or [your girlfriend is] getting shot."  Backus further testified that, during the drive to his girlfriend's house, defendant and Rouille "were talking back and forth the whole time" and, at one point, Backus said to defendant, "Yeah, you were right, these people can't be trusted, they're selfish" — a comment that Backus understood to be a reference to drug addicts.

Upon arriving at the girlfriend's apartment complex, Backus and Rouille exited the vehicle and eventually were buzzed into the premises.  Defendant remained in the vehicle.  Once inside the apartment, Rouille pointed the gun at Backus' girlfriend and "told her [s]he had 30 minutes to get the money or else somebody [was] getting shot."  A conversation between Rouille and Backus' girlfriend then ensued; when Rouille informed her that she now had 15 minutes to get his money, Backus' girlfriend told Rouille to go ahead and shoot.  Rouille then dropped the weapon and punched the woman with his fist, at which point Backus intervened.  The girlfriend fled the apartment while Rouille assaulted Backus — repeatedly striking Backus with his fists and the gun.  When the physical struggle ended, Rouille began loading the revolver; when Backus told him to put the gun down, Rouille responded by searching the apartment for Backus' girlfriend and, upon discovering that she was gone, left the premises.  Photographs contained in the record on appeal depict various cuts and bruises to Backus' face and head, and a live round of ammunition subsequently was recovered from the apartment.

Defendant, who had been waiting in the car the entire time, saw Backus' girlfriend hurry out of the building, place a call on her cell phone, enter her vehicle and drive away.  According to defendant, he immediately "had a bad feeling" that "something wasn't right" and, after waiting another minute or two, drove away — leaving Rouille behind.  A short time later, however, Rouille called defendant and, in response to Rouille's request, defendant turned around and headed back towards the apartment — picking up Rouille en route.  Defendant then drove to Rouille's residence, dropped him off and went to work.  Video surveillance records from the girlfriend's apartment complex depict the grey sedan arriving at the scene, Backus and Rouille exiting the vehicle, Backus and Rouille being admitted into the building by

Backus' girlfriend, the girlfriend hastily exiting the building and driving away, the grey sedan — admittedly driven by defendant — pull away a short time later, Rouille exiting the building and leaving the scene on foot and Backus thereafter stepping outside, presumably looking for his girlfriend.

The foregoing proof, in our view, is legally sufficient to sustain the charges at issue. Defendant indeed testified — and Backus readily confirmed — that defendant never threatened Backus, displayed a gun or attempted to rob him, and it is clear from the testimony and the video surveillance tapes that defendant never entered the apartment belonging to Backus' girlfriend or otherwise directly participated in the events that transpired therein. That said, there nonetheless is ample proof from which the jury reasonably could infer that defendant shared Rouille's intent to commit the underlying crimes — despite the fact that defendant's participation was limited to being the getaway driver (see People v Jackson, 44 NY2d 935, 937 [1978]; People v Keitt, 42 NY2d 926, 927 [1977]; People v Rupert, 118 AD3d at 1127; People v Gage, 259 AD2d 837, 838-839 [1999], lv denied 93 NY2d 924 [1999]; compare People v Taylor, 141 AD2d 581, 581-582 [1988], lv denied 72 NY2d 962 [1988]; People v Rivera, 62 AD2d 1005, 1005 [1978]). Specifically, defendant drove Rouille to the home of Backus' girlfriend (1) knowing that Backus owed Rouille money, (2) after Rouille displayed a gun, and (3) after Rouille informed Backus — while in the car and in defendant's presence — that either he would get his money or someone would get shot. More to the point, defendant remained at the premises — waiting for Rouille, who was armed with a gun, to emerge — until he saw Backus' girlfriend flee the scene. Even then, despite having witnessed what had transpired between Backus and Rouille in the car and thereafter being presented with circumstances suggesting that something was amiss at the apartment, defendant still heeded Rouille's subsequent request to turn around and return to the scene in order to pick him up. Although defendant testified that Rouille never threatened to shoot Backus and that there was "never no gun involved at all," this conflicting testimony presented a credibility issue for the jury to resolve (see People v Haardt, 129 AD3d 1322, 1323 [2015]). In any event, "strict liability for an aggravating circumstance" — such as the use of a firearm — "attaches to an

accomplice, regardless of his or her degree of intent, knowledge or conduct with respect to the aggravating circumstance" (People v Vicioso, 116 AD3d at 1251 [internal quotation marks, brackets and citation omitted]).

Finally, defendant's pro se claim — that the People deliberately solicited impermissible and prejudicial testimony from Backus on their case-in-chief — is unpreserved for our review as no objection thereto was made during the course of the trial (see People v Williams, 61 AD3d 1383, 1383 [2009], lv denied 13 NY3d 751 [2009]; see also People v Damato, 79 AD3d 1060, 1060 [2010]) and, in any event, is lacking in merit. Accordingly, the judgment of conviction is affirmed.

McCarthy, J.P., Lynch and Clark, JJ., concur.


ORDERED that the judgment is affirmed.




ENTER:

Robert D. Mayberger
Clerk of the Court