People v Smith (2022 NY Slip Op 03547)

People v Smith

2022 NY Slip Op 03547

Decided on June 2, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 2, 2022

111929
[*1]The People of the State of New York, Respondent,
v
Travis Smith, Appellant.

Calendar Date:April 27, 2022

Before:Clark, J.P., Pritzker, Colangelo, Ceresia and McShan, JJ.

Steven M. Sharp, Albany, for appellant.
P. David Soares, District Attorney, Albany (Vincent Stark of counsel), for respondent.

Clark, J.P.
Appeal from a judgment of the Supreme Court (McDonough, J.), rendered June 12, 2019 in Albany County, upon a verdict convicting defendant of the crimes of robbery in the first degree, robbery in the second degree, attempted bribing a witness and tampering with a witness in the fourth degree.
On the evening of December 13, 2017, the victim arrived at a particular address in the City of Albany with the intention of selling approximately 14 grams of marihuana to a buyer. Shortly after arriving at the designated location, the victim was attacked by four masked individuals, who took the victim's wallet but were unable to take the victim's messenger bag containing the marihuana. During the scuffle, the victim sustained a gunshot wound that struck both his right elbow and left leg. Defendant was subsequently charged with, as relevant here, robbery in the first degree and robbery in the second degree under an acting in concert theory, as well as two counts of attempted bribing a witness and one count of tampering with a witness in the fourth degree.[FN1] At the ensuing jury trial, the People proceeded under the theory that defendant was not one of the four individuals who attacked and robbed the victim, but that he was nonetheless criminally liable for the crimes of robbery in the first and second degrees because, acting in concert with the four individuals, he set the victim up to be robbed.[FN2] Defendant was ultimately convicted of robbery in the first and second degrees, one count of attempted bribing a witness and tampering with a witness in the fourth degree. Defendant was sentenced, as a predicate felony offender, to concurrent prison terms of 15 years, followed by five years of postrelease supervision, for the robbery convictions, a consecutive prison term of 2 to 4 years for the attempted bribing a witness conviction, and a lesser concurrent term of incarceration for the tampering with a witness conviction. Defendant appeals, primarily arguing that the verdict is based upon legally insufficient evidence and is against the weight of the evidence.
We agree with defendant that his robbery convictions are unsupported by legally sufficient evidence because the People failed to prove beyond a reasonable doubt that he bore the requisite intent for accessorial liability. As the People proceeded under a theory of accessorial liability, defendant could be convicted of robbery in the first and second degrees only if they established that, acting with the intent to forcibly steal property, defendant solicited, requested, commanded, importuned or intentionally aided another to engage in conduct constituting robbery in the first and second degrees (see Penal Law §§ 20.00, 160.10 [1]; 160.15 [2]; People v Flanagan, 28 NY3d 644, 661 [2017]; People v Knox, 137 AD3d 1330, 1331 [2016], lv denied 27 NY3d 1070 [2016]). As relevant here, a person is guilty of robbery in the first degree "when he [or she] forcibly steals property and when, in the course of the commission [*2]of the crime or of immediate flight therefrom, he [or she] or another participant in the crime . . . [i]s armed with a deadly weapon" (Penal Law § 160.15 [2]). A person is guilty of robbery in the second degree when he or she "forcibly steals property and when . . . [h]e [or she] is aided by another person actually present" (Penal Law § 160.10 [1]). "[T]o be [held] liable under an acting in concert theory, the accomplice and principal must share a 'community of purpose'" (People v Scott, 25 NY3d 1107, 1110 [2015], quoting People v La Belle, 18 NY2d 405, 412 [1966]; see People v Allah, 71 NY2d 830, 831-832 [1988]). A person acts with intent to forcibly steal property when "his [or her] conscious objective is to cause such result or to engage in such conduct" (Penal Law § 15.05 [1]).
The evidence demonstrated that, after purchasing a gram of marihuana from the victim earlier in the evening, defendant asked the victim if he would sell an additional 14 grams of marihuana and that, after the victim agreed, defendant sent the victim to a particular address to complete the drug sale. The victim testified that he believed that he was meeting defendant at his address,[FN3] whereas defendant told the police in a video-recorded statement that he essentially brokered a drug deal between the victim and an individual named Tyson Williams.[FN4] The victim testified that, upon arriving at the designated location, he called defendant, who did not answer, and then sent defendant a text message to let him know that he had arrived. The evidence, including the victim's testimony and video footage from the scene, demonstrated that four masked individuals approached and attacked the victim shortly after he arrived at the location.
The victim adamantly testified that he recognized defendant — through his voice, clothing, demeanor, mannerisms and height — as one of the four masked individuals. He stated that defendant wore a light-colored mask and that the individual wearing a light colored mask had shot him.[FN5] However, there was significant evidence to suggest that defendant was not one of the four individuals who attacked and robbed the victim. Most significantly, traffic camera footage, together with a certified abstract of a motor vehicle registration, demonstrated that defendant's vehicle was driving past the altercation at the time of its occurrence. Additionally, a light-colored mask was found at the scene and the DNA mixture profile obtained from that mask was consistent with the DNA profile of an individual named Jay Rodwell, admixed with at least one additional donor, with Rodwell being a major contributor. There was no physical or forensic evidence linking defendant to the crime scene. Finally, clothing described by the victim as having been worn by the individual in the light-colored mask did not, as depicted in certain video footage, match the clothing worn by defendant earlier in the evening.
Defendant maintained, in his recorded statement to the police[*3], that his participation was limited to brokering a drug deal between the victim and Williams and that he was unaware of any plan to attack and rob the victim. Defendant stated to the police that he could have purchased the marihuana and delivered it to Williams himself, but that, because he was afraid that Williams would rob him, he sent the victim instead to "test[] the waters." The People, for their part, argued that defendant conspired with Williams, Rodwell and/or others to rob the victim after luring him to a certain location under the guise of a drug transaction. The People, however, did not have any direct evidence demonstrating that defendant knew of or shared an intent to forcibly steal property from the victim (compare People v Gage, 259 AD2d 837, 838-839 [1999], lvs denied 93 NY2d 924, 970 [1999]). Indeed, there was no evidence that defendant had prior knowledge of a plan to rob the victim (see People v Hawkins, 192 AD3d 1637, 1639 [2021]). Other than defendant's own statement to the police, there was no evidence of communication between defendant and Williams prior to the incident. The People did not present cell phone records or any other evidence establishing that defendant was in contact with Williams, Rodwell or the other suspected perpetrators during or after the robbery (compare People v Davis, 177 AD3d 1323, 1324 [2019], lv denied 35 NY3d 969 [2020]). Nor was there any evidence that defendant received proceeds or otherwise derived a benefit from the robbery (compare People v Truesdell, 70 NY2d 809, 811 [1987]; People v Gage, 259 AD2d at 838-839).
Rather, to support their theory, the People relied on sparse circumstantial evidence. However, the circumstantial evidence presented here is legally insufficient to support the conclusion that defendant knew of the masked individuals' plan to forcibly steal property from the victim and shared an intent to do so (see People v Taylor, 141 AD2d 581, 581-582 [1988]; see generally People v Hawkins, 192 AD3d at 1638-1639; compare People v Godbee, 63 NY2d 270, 282 [1984]; People v Horsey, 304 AD2d 852, 853-854 [2003], lv denied 1 NY3d 573 [2003]).[FN6] In short, viewing the evidence in the light most favorable to the People (see People v Vicioso, 116 AD3d 1250, 1253 [2014]), we cannot conclude that there is a valid line of reasoning and permissible inferences from which the jury could conclude beyond a reasonable doubt that defendant intentionally aided and shared a community of purpose with the four masked individuals who attacked and robbed the victim (compare People v Davis, 177 AD3d at 1324; People v Knox, 137 AD3d at 1333; People v Carr-El, 287 AD2d 731, 733 [2001], affd 99 NY2d 546 [2002]). Accordingly, given that they are not supported by legally sufficient evidence, defendant's convictions for robbery in the first degree and robbery in the second degree under counts 3 and 4 of the superseding indictment must be reversed, the sentences imposed thereon vacated and said counts dismissed[*4].
We reach the opposite conclusion with respect to the convictions for attempted bribing a witness and tampering with a witness in the fourth degree. As relevant here, a person is guilty of attempted bribing a witness when, "with intent to commit a crime," such person engages in conduct that tends to effect the commission of the crime of bribing a witness (Penal Law § 110.00) — that is, that he or she "confers, or offers or agrees to confer, any benefit upon a witness or a person about to be called as a witness in any action or proceeding upon an agreement or understanding that . . . such witness will absent himself [or herself] from, or otherwise avoid or seek to avoid appearing or testifying at, such action or proceeding" (Penal Law § 215.00 [b]). Additionally, as pertinent here, "[a] person is guilty of tampering with a witness when, knowing that a person is or is about to be called as a witness in an action or proceeding, . . . he [or she] wrongfully induces or attempts to induce such person to absent himself [or herself] from, or otherwise to avoid or seek to avoid appearing or testifying at, such action or proceeding" (Penal Law § 215.10 [a]).
The evidence, which included testimony from the victim and a recorded jail call, demonstrated that, a few weeks after the incident, defendant orchestrated a phone call to the victim with the goal of persuading the victim to drop the charges against him. As can be heard in the recorded jail call, which was played for the jury, defendant called his mother and asked that a call be placed to the victim to explain that he was innocent and to offer the sum of $5,000 to drop the charges against him. Defendant gave his mother the personal identification number to access his cell phone and directed her to retrieve the victim's number from his contact list. While defendant was on the line with his mother, a man — who identified defendant as his "son-in-law" — can be heard on the phone with the victim. The victim testified that the man tried "to convince [him] to say that [defendant] was not involved and [that defendant] wasn't there the night that [he] got shot." Although the evidence established that the call to the victim ended without a monetary offer, we find that the foregoing evidence amply supported the convictions of attempted bribing a witness and tampering with a witness in the fourth degree (see Penal Law §§ 110.00, 215.00 [b]; 215.10 [a]; People v Legrand, 50 AD2d 906, 907 [1975]). As those convictions are supported by legally sufficient evidence and are not against the weight of the evidence, there is no basis upon which to disturb them.
As a final matter, we do not find the sentences imposed for the convictions of attempted bribing a witness and tampering with a witness in the fourth degree to be harsh and excessive (see generally People v Garrand, 22 AD3d 959, 960 [2005], lv denied 6 NY3d 812 [2006]). To the extent that we have not expressly addressed any of defendant's remaining arguments[*5], they have either been rendered academic by our determination or have been examined and found to be without merit.
Pritzker, Colangelo, Ceresia and McShan, JJ., concur.
ORDERED that the judgment is modified, on the law, by reversing defendant's convictions of robbery in the first degree and robbery in the second degree under counts 3 and 4 of the superseding indictment; said counts dismissed and the sentences imposed thereon vacated; and, as so modified, affirmed.

Footnotes

Footnote 1: Defendant was also charged with attempted murder in the second degree and assault in the first degree. However, those charges were dismissed upon the People's motion prior to jury selection.
Footnote 2: Despite proceeding under a theory of accessorial liability throughout trial, the prosecutor misleadingly stated during summation that it was "possible" that defendant was one of the four individuals and that it was for the jury to decide whether he was or was not.

Footnote 3: There was some evidence of text messages between the victim and defendant. However, the victim admitted to police that he had deleted some of the text messages. The police did not attempt to recover the deleted text exchange from the victim's phone and made only a belated, half-hearted and unsuccessful attempt to do so on defendant's phone after defendant's trial had started.

Footnote 4: At trial, one of the detectives testified that Williams was shot and killed in 2018.
Footnote 5: Cell phone records demonstrate that the victim placed a phone call to defendant shortly after he was shot, despite believing that it was defendant who had shot him.

Footnote 6: One of the detectives involved in the investigation conceded that the circumstances were consistent with either setting up a drug deal or setting the victim up to be robbed.