People v Jenkins (2022 NY Slip Op 06652)

People v Jenkins

2022 NY Slip Op 06652

Decided on November 23, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 23, 2022

110650
[*1]The People of the State of New York, Respondent,
v
Willie F. Jenkins, Appellant.

Calendar Date:October 20, 2022

Before:Egan Jr., J.P., Lynch, Aarons, Pritzker and McShan, JJ.

Pamela B. Bleiwas, Ithaca, for appellant.
Weeden A. Wetmore, District Attorney, Elmira (Nathan M. Bloom of counsel), for respondent.

McShan, J.
Appeal from a judgment of the County Court of Chemung County (Christopher P. Baker, J.), rendered August 27, 2018, upon a verdict convicting defendant of the crime of murder in the second degree.
In June 2017, Albert Sturgis Jr. (hereinafter the victim) was killed during an altercation with Demetrius Mack that occurred at Gush's Thirsty Bear, a bar located in the City of Elmira, Chemung County. Mack, defendant and another individual met in the parking lot and entered the establishment together, wherein Mack immediately engaged in a fist fight with the victim. At some point during the altercation, Mack brandished a knife and slashed at the victim, landing several blows including one to the victim's chest that ultimately proved to be fatal. According to eyewitness testimony, while the altercation ensued defendant and the other individual pointed guns at the various onlookers, before all three eventually fled the scene. Defendant was thereafter charged by indictment with one count of murder in the second degree and the matter proceeded to trial, where the People pursued a theory that defendant acted in concert with Mack by aiding him in the commission of the murder. After a two-day jury trial, defendant was convicted as charged. Defendant was sentenced to a prison term of 25 years to life, with the sentence to run consecutive to his sentence for an unrelated conviction. Defendant appeals.
Defendant contends that his conviction is not supported by legally sufficient evidence and is against the weight of the evidence. Primarily, defendant argues that the People failed to prove beyond a reasonable doubt that he shared Mack's intent to commit the crime or that his actions aided Mack in the commission of the murder. As relevant here, a person is guilty of murder in the second degree when, "[w]ith intent to cause the death of another person, he [or she] causes the death of such person or of a third person" (Penal Law § 125.25 [1]). To hold a person responsible for the criminal conduct of another, the People must demonstrate that "when, acting with the mental culpability required for the commission thereof, he [or she] solicit[ed], request[ed], command[ed], importune[d], or intentionally aid[ed] [the principal] to engage in such conduct" (Penal Law § 20.00; see People v James, 176 AD3d 1492, 1493 [3d Dept 2019], lv denied 34 NY3d 1078 [2019]). In other words, when proceeding "under an acting in concert theory, [the People must prove that] the accomplice and principal [shared] a 'community of purpose'" (People v Scott, 25 NY3d 1107, 1110 [2015], quoting People v La Belle, 18 NY2d 405, 412 [1966]; accord People v Smith, 206 AD3d 1058, 1059-1060 [3d Dept 2022]). Moreover, in the case of willful homicide, "a spontaneous and not concerted or planned use of [a] weapon to kill is not, without more, attributable to the companion whose guilt in a joint design to effect death must be established beyond a reasonable doubt" (People v Monaco, 14 NY2d 43, 45 [1964]; [*2]accord People v Rivera, 176 AD2d 510, 512 [1st Dept 1991], lv denied 79 NY2d 863 [1992]; see People v Cabassa, 79 NY2d 722, 728 [1992], cert denied 506 US 1011 [1992]). In this respect, "[i]t is essential that the intent by [the defendant] to kill be fairly deducible from the proof and that the proof exclude any other purpose" (People v Monaco, 14 NY2dat 46; accord People v McDonald, 172 AD3d 1900, 1902 [4th Dept 2019]).
The evidence introduced at trial demonstrated that, upon arriving at Gush's, defendant, Mack and the other individual proceeded out to the patio area. Mack then immediately approached the victim and the two began exchanging blows. The sole eyewitness testimony presented by the People established that the altercation between Mack and the victim began as a fist fight until the victim gained the upper hand and knocked Mack to the ground. When Mack got up, he began swinging wildly at the victim, at which point the eyewitness first observed that Mack had a knife in his hand, which had become visible because of the lights from neighboring establishments. The witness testified that he had not seen the knife prior to the victim knocking Mack down and no other evidence presented at trial established that the knife was visible prior to that point.
While the altercation ensued, defendant and the other individual who had entered with Mack had pulled out guns and trained them on the various onlookers who were present on the patio. According to the eyewitness, at some point after Mack had already brandished the knife, the victim asked the eyewitness to "[g]o get the thing," which the eyewitness understood to mean that he should retrieve a gun. The eyewitness intended on retrieving a gun from the victim's vehicle, however, he was prevented from doing so because defendant told him "Don't move, I don't want to have to kill you," and "You know what I do." The eyewitness testified that he only intended to intervene after Mack had inflicted wounds to the victim, at which point the victim asked him to get a gun. Further, the eyewitness stated that his intent at that point was to retrieve a weapon and shoot defendant, Mack and the other individual. After the fight concluded, defendant fled the scene with Mack and the other individual. The eyewitness and others then assisted the victim into a car and transported him to a nearby hospital, where he ultimately succumbed to the wound to his upper chest.
The People's theory at trial rested on establishing that defendant's display of a gun during the altercation prolonged the attack and delayed the eyewitness and others from transporting the victim to the hospital. In this respect, the People suggest that it can be reasonably inferred that defendant's act of brandishing the gun was done to provide Mack with the opportunity to complete his objective and murder the victim. However, the testimony of the eyewitness was clear that the altercation between Mack and the victim began as a fist fight and only evolved [*3]into a fatal encounter after Mack was knocked to the ground and resorted to the use of a knife. In this respect, defendant's conduct in support of Mack at the commencement of the altercation would not establish that he shared a community of purpose with Mack with respect to his later-formed homicidal intent (see People v Monaco, 14 NY2d at 46). Rather, the People were required to present evidence that defendant "knowingly participated and continued to participate even after [Mack's] intentions became clear" to defendant (People v Allah, 71 NY2d 830, 832 [1988]). We find that the People failed to do so.
We note that the altercation between Mack and the victim ensued for a little over a minute, and the only aid that the eyewitness testified that he intended to render was retrieving a gun to shoot defendant, Mack and the other individual. At no point did the eyewitness express any indication that he or anyone else who was present attempted to break up the fight, render medical aid to the victim or contact authorities. Moreover, regardless of when defendant brandished his weapon and warned the eyewitness to stay out of the altercation, the testimony of the eyewitness does not establish that defendant "was aware of the true state of affairs," which had changed once Mack began using a knife (People v James, 176 AD3d at 1494; see People v Nelson, 178 AD3d 1395, 1396 [4th Dept 2019], lv denied 35 NY3d 972 [2020]). Even viewing the evidence in the light most favorable to the People (see People v McGowan, 149 AD3d 1161, 1162 [3d Dept 2017], lv denied 29 NY3d 999 [2017]), we find that the jury would have been required to speculate that defendant had become aware of Mack's spontaneous use of a knife during the altercation (see People v Lazaro, 125 AD3d 1008, 1009 [2d Dept 2015]; compare People v Lavayen, 200 AD3d 1069, 1070-1071 [2d Dept 2021], lv denied 38 NY3d 928 [2022]; People v Maldonado, 189 AD3d 2083, 2085 [4th Dept 2020], lv denied 36 NY3d 1098 [2021]; People v Knox, 137 AD3d 1330, 1333-1334 [3d Dept 2016], lv denied 27 NY3d 1070 [2016]). To this end, defendant's act of brandishing the gun does not "rationally exclude the possibility that . . . defendant was without knowledge of [Mack]'s intent," and that defendant's intent was merely to prevent intervention in a fist fight between Mack and the victim (People v McDonald, 172 AD3d at 1902; see People v La Belle, 18 NY2d at 411-412; People v Bruno, 144 AD3d 413, 414 [1st Dept 2016], lv denied 28 NY3d 1182 [2017]). Accordingly, in the absence of proof of a "willful intent in advance to kill, or participation after [defendant] knew the knife was being used by [Mack] to kill," defendant's conviction must be reversed as unsupported by legally sufficient evidence and the indictment dismissed (People v Monaco, 14 NY2d at 46 [emphasis added]; see People v Lopez, 137 AD3d 1166, 1168 [2d Dept 2016]; People v Akptotanor, 158 AD2d 694, 695 [2d Dept 1990], affd 76 NY2d 1000 [1990]; People v May, 9 AD2d 508, 512 [[*4]1st Dept 1960]).
In light of our determination, defendant's remaining contentions have been rendered academic.
Egan Jr., J.P., Lynch, Aarons and Pritzker, JJ., concur.
ORDERED that the judgment is reversed, on the law, and indictment dismissed.