People v Walker (2024 NY Slip Op 02346)

People v Walker

2024 NY Slip Op 02346

Decided on May 2, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 2, 2024

113207 113707
[*1]The People of the State of New York, Respondent,
v
Jeffrey Walker, Appellant.

Calendar Date:March 29, 2024

Before:Garry, P.J., Clark, Pritzker, Ceresia and Mackey, JJ.

Capezza Hill, LLP, Albany (Thomas A. Capezza of counsel), for appellant.
P. David Soares, District Attorney, Albany (Emily Schultz of counsel), for respondent.

Ceresia, J.
Appeals (1) from a judgment of the County Court of Albany County (William A. Carter, J.), rendered December 12, 2019, upon a verdict convicting defendant of the crimes of assault in the first degree, criminal use of a firearm in the first degree and criminal possession of a weapon in the second degree, and (2) by permission, from an order of the Supreme Court (Roger D. McDonough, J.), entered July 14, 2022 in Albany County, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.
As a result of a shooting that occurred in the early morning hours of October 7, 2018 in the City of Albany, defendant was charged with various crimes and, following a jury trial, was convicted of assault in the first degree, criminal use of a firearm in the first degree and criminal possession of a weapon in the second degree. County Court sentenced defendant to concurrent determinate terms of imprisonment, the greatest of which was 25 years, to be followed by five years of postrelease supervision. Defendant appeals.
Defendant argues that the verdict is based upon legally insufficient evidence, essentially contending that the proof failed to establish his identity as the shooter or as anything more than a mere bystander. "In conducting a legal sufficiency analysis, this Court views the evidence in the light most favorable to the People and evaluates whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged" (People v Flower, 173 AD3d 1449, 1450 [3d Dept 2019] [internal quotation marks and citations omitted], lv denied 34 NY3d 931 [2019]; accord People v Dickinson, 182 AD3d 783, 783 [3d Dept 2020], lv denied 35 NY3d 1065 [2020]). As relevant here, "[a] person is guilty of assault in the first degree when . . . [w]ith the intent to cause serious physical injury to another person, he [or she] causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument" (Penal Law § 120.10 [1]). "A person is guilty of criminal use of a firearm in the first degree when he [or she] commits any class B violent felony offense as defined in [Penal Law § 70.02 (1) (a)] and he [or she] . . . possesses a deadly weapon, if the weapon is a loaded weapon from which a shot, readily capable of producing death or other serious injury may be discharged" (Penal Law § 265.09 [1] [a]). "A person is guilty of criminal possession of a weapon in the second degree when . . . such person possesses any loaded firearm" (Penal Law § 265.03 [3]).
According to the victim's trial testimony, on the night in question, he was at a bar in the City of Albany. The victim was wearing designer clothing and prominent diamond jewelry and was driving a luxury vehicle. While at the bar, the victim had [*2]a brief conversation with Reginald Pass, a person whom he identified as a gang member and with whom he had previously had gang-related issues. Pass pressed the victim to provide financial assistance to Pass's cousin, who was incarcerated, but the victim demurred. A short time later, the victim left and went to an after-hours club, where he again saw Pass with a group of friends, including defendant. Upon exiting the club, the victim walked up to a vehicle and leaned in to speak to its occupants. At this point, surveillance video shows a group of four individuals approaching the victim. The person in the front of the group was wearing a blue sweatshirt, and, in a later police interview, defendant admitted that he was present and was the only person wearing a blue sweatshirt. The other individuals in the group were Patrice Derville, Maurice Milligan and an unidentified male.
As observed in the video, the group then briefly surrounds the victim, but the actions of each individual cannot be seen. According to the victim's testimony regarding what happened during this encounter, he was struck on the head with a heavy object. A struggle ensued and someone ripped the victim's chain from his neck. During this altercation, the victim saw Derville try to hand a gun to defendant, but the victim did not know whether defendant took it. The victim turned away and began to run, at which point he was shot in the back. He then looked back and saw that defendant did not have the gun.
The victim continued running, coughing up blood as he did so, and soon saw that the same group was now following him in a vehicle driven by defendant. The victim heard Milligan tell defendant to stop the car, and defendant did so. Milligan jumped out and took the victim's ring, watch, cash and car keys, then got back in the vehicle, which drove away. The victim was later transported to the hospital, where it was discovered that his lung had been punctured by a bullet.
At trial, the jury was instructed that a guilty verdict would be permissible in the event that they determined that defendant acted either personally or in concert with another. In that regard, "there is no legal distinction between liability as a principal or criminal culpability as an accomplice" (People v Rivera, 84 NY2d 766, 769 [1995]), and the jury need not be unanimous as to which theory applies (see People v Mateo, 2 NY3d 383, 406 [2004], cert denied 542 US 946 [2004]).
Turning first to the charge of assault in the first degree, evidence that defendant acted as the principal is plainly lacking. Defendant cannot be seen on the surveillance video holding the gun and, as recounted by the victim, although he saw Derville try to pass a gun to defendant, he never saw defendant with the gun either immediately before or immediately after the shooting, a span of only a few seconds at most. Considering the foregoing together with the absence of any evidence that defendant was even aware that a gun was present or was being [*3]offered to him, it cannot be concluded without resort to improper speculation that defendant personally fired the gun.
Moving on, therefore, to the question of whether defendant acted as an accomplice to the shooting, a person will be held criminally liable for the conduct of another "when, acting with the mental culpability required for the commission thereof, he [or she] solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct" (Penal Law § 20.00). "[W]hen proceeding under an acting in concert theory, the People must prove that the accomplice and principal shared a community of purpose" (People v Jenkins, 210 AD3d 1293, 1294 [3d Dept 2022] [internal quotation marks, brackets and citations omitted], lv denied 39 NY3d 1155 [2023]). Significantly, a "defendant's mere presence at the scene of a crime, even with knowledge that the crime is taking place, or mere association with a perpetrator of a crime, is not enough for accessorial liability" (People v Lopez, 137 AD3d 1166, 1167 [2d Dept 2016] [internal quotation marks and citation omitted]).
The trial evidence is insufficient to demonstrate that defendant shared a community of purpose with the unidentified shooter to cause serious physical injury to the victim or that he aided the shooter in doing so (see People v Jenkins, 210 AD3d at 1295-1296; People v Bruno, 144 AD3d 413, 413-414 [1st Dept 2016], lv denied 28 NY3d 1182 [2017]; People v Torres, 153 AD2d 911, 911 [2d Dept 1989], lv denied 75 NY2d 818 [1990]). To begin with, there was no evidence that defendant formed a plan with anyone to assault the victim or had any advance knowledge that the victim was going to be attacked (compare People v Maldonado, 189 AD3d 2083, 2084-2085 [4th Dept 2020], lv denied 36 NY3d 1098 [2021]; People v Knox, 137 AD3d 1330, 1333-1334 [3d Dept 2016], lv denied 27 NY3d 1070 [2016]). Further, although there is proof that defendant was present, he cannot be observed on the surveillance video striking the victim or participating in any way in the altercation that preceded the shooting. In fact, the victim testified that, during the brief struggle, he did not know if defendant was there to help him or harm him and that it was defendant's friends with whom he was actually fighting. Additionally, as noted above, there was no indication during this brief and seemingly chaotic interaction that defendant was aware that Derville had a gun, let alone tried to pass it to him. This situation is also not akin to cases where an accomplice's community of purpose with a fellow assailant can be inferred from his or her continued participation in an attack after the other produces a weapon (see e.g. People v Allah, 71 NY2d 830, 832 [1988]; People v Lavayen, 200 AD3d 1069, 1070-1071 [2d Dept 2021], lv denied 38 NY3d 928 [2022]). Finally, it is true that there is evidence that, following the shooting, defendant drove a vehicle in the direction of the victim and stopped it at Milligan's command[*4], at which time Milligan got out and robbed the victim. However, that alone is insufficient to establish that defendant shared a community of purpose to commit the earlier assault or provided assistance thereto.[FN1] Accordingly, even viewing the evidence in the light most favorable to the People, we are constrained to conclude that it is legally insufficient to demonstrate beyond a reasonable doubt defendant's guilt as an accomplice to the shooting (see People v Smith, 206 AD3d 1058, 1061 [3d Dept 2022]; People v McDonald, 172 AD3d 1900, 1902 [4th Dept 2019]; People v Chardon, 83 AD3d 954, 957 [2d Dept 2011], lv denied 18 NY3d 857 [2011]).
Similarly, the remaining charges of criminal use of a firearm in the first degree and criminal possession of a weapon in the second degree cannot stand. As outlined above, "[t]here was no proof presented during the trial that defendant ever personally possessed . . . the handgun[ ] or in any way encouraged or intentionally aided [the shooter] in their possession of the handgun[ ]" (People v Spencer, 152 AD3d 863, 866 [3d Dept 2017], lv denied 30 NY3d 983 [2017]; see People v Rayside, 187 AD2d 680, 681 [2d Dept 1992], lv denied 81 NY2d 845 [1993]; compare People v Lall, 223 AD3d 1098, 1106-1107 [3d Dept 2024]; People v Pittman, 189 AD2d 918, 919 [3d Dept 1993], lv denied 81 NY2d 891 [1993]). Furthermore, noting that we have determined that the evidence is legally insufficient to support the charge of assault, the criminal use of a firearm charge also lacks the necessary element of commission of a class B felony (see People v Bass, 277 AD2d 488, 495-496 [3d Dept 2000], lv denied 96 NY2d 780 [2001]). In light of our conclusions herein, we need not reach defendant's remaining contentions.
Garry, P.J., Clark, Pritzker and Mackey, JJ., concur.
ORDERED that the judgment is reversed, on the law, and indictment dismissed.
ORDERED that the appeal from the order is dismissed, as academic.

Footnotes

Footnote 1: If anything, the proof of what transpired before, during and after the altercation could arguably allow an inference that defendant harbored a purpose to rob the victim, but this does not satisfy the element of intent to cause serious physical injury as required by the assault charge (see People v Croley, 163 AD3d 1056, 1060 [3d Dept 2018]).